*EX PARTE* CRAFTS.

1. Where kindred and creditors of the deceased fail to apply for letters of administration, the probate judge may properly grant letters to any person applying; and after letters have been so granted they may not be revoked without an application for that purpose to which the administrator has been made a party.

2. A petition for letters of administration, in which no mention is made of a former grant of letters, and no service made upon the incumbent, cannot be regarded as a proceeding to revoke the former letters; and the incumbent is not made a party to such proceeding by the usual published citation to kindred and creditors, nor by his filing a *caveat* and protest against the second grant.

3. *Query.* Where letters have been granted to a stranger, should they be revoked merely because the heir or next of kin subsequently applies for a revocation and new grant of letters?

Before HUDSON, J., Charleston, March, 1887.

The opinion fully states the case.

*Messrs. T. G. Barker & H. E. Young*, for appellant.

*Messrs. Smythe & Lee*, contra.

March 21, 1888. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. William Crafts died many years ago, leaving a will which was admitted to probate in Charleston, September 21, 1820, and his son, William Crafts, jr., qualified as executor, but he died, and letters of administration *de bonis non cum testamento annexo* were granted to Ralph Izard Middleton on July 26, 1847. Nearly forty years after, on August 26, 1886, George I. Crafts filed his petition in the Probate Court, stating that he was the next of kin and heir of the testator, William Crafts, who as the survivor of W. S. Crafts was interested in a "French spoliation claim;" and that to prosecute such claim it was necessary that administration should be first taken out on the estate of William Crafts. Wherefore he prayed that letters *de bonis non, &c.*, should be granted to him. The petition made no reference to Mr. Middleton or his prior letters of admin-

istration, possibly forgotten or overlooked. At all events, there was only the usual publication to kindred and creditors, such as is required to be given in an original application for letters upon an unrepresented estate.

It happened, however, that the publication came to the knowledge of Mr. Middleton, and he filed his *caveat* and protest against the granting of the letters, on the ground that he was the administrator of the estate, and no other appointment could be made. The matter coming on to be heard, counsel for G. I. Crafts moved orally for a decree that the letters of administration granted to R. I. Middleton be revoked, and that the petition of G. I. Crafts for administration be granted. Counsel for Middleton objected to the matter being heard and determined in the manner proposed for two reasons: I. That no petition had been filed or proceeding instituted to revoke the letters of administration granted to R. I. Middleton, and that some such direct proceeding was necessary to notify the other party, and to bring the matter properly before the court. II. That before the court can hear and determine the merits of the issue so sought to be raised, it is necessary that testimony shall be adduced, both as to the facts set forth in the petition, and as to the facts necessary to enable the court to do justice to all the parties in interest before the present administration should be revoked and new letters granted, &c.

The probate judge, however, took the view, that the administrator, Middleton, by filing the *caveat* made himself a party to the proceeding, which could be considered to be, not only what it purported, an application for the appointment of the petitioner, but as incidentally involving also an application to revoke the first appointment, and that Middleton, by not denying the statement of the petition that Crafts was the next of kin of the testator, substantially admitted that fact; and as he states in his decree, "the case being called and nothing further being shown, I accordingly granted the letters to George I. Crafts." Upon appeal from this decree to the Circuit Court, the matter came before Judge Hudson, who reversed the decree of the Probate Court, upon the ground that Ralph Izard Middleton being administrator, no other administrator could be appointed, without

first, under proper proceedings, having his letters duly revoked, which was not done.

From this decree George I. Crafts appeals to this court upon the following grounds : 1. That his honor, the presiding judge, erred in holding that the appeal is well taken because it appears that Ralph Izard Middleton is, or claims to be, the administrator with the will annexed to the estate of said testator. 2. That his honor erred in holding that no new administration can be granted by the Probate Court to any one, without first, under proper proceeding, having these letters duly revoked, and in holding that this has not been done in this case. 3. That his honor erred in holding that the proceedings before the Probate Court are irregular and insufficient to accomplish the object sought, and erred in therefore setting aside the judgment of the Probate Court.

There is no doubt that when an executor dies leaving the estate not fully administered, it is the duty of the probate judge to grant letters of administration with the will annexed "to such persons as shall have the greatest interest in sustaining such will, in the order of their interests. And in case no person taking interests under such will, shall apply, within three months after the death of the testator, then to the greatest creditor or creditors, and in default of such applying, then to such other persons as may apply therefor." *General Statutes*, section 1881. This law is undoubtedly imperative on the probate judge, who shall appoint the persons preferred, and in the order of preference. But the act itself takes cognizance of the fact, that the preferred persons may not be willing to take upon themselves the duties and responsibilities of the appointment, and in that case the probate judge may appoint such other persons as may apply. And when such other person is appointed by the Probate Court, being a court of record, and having jurisdiction of the subject, it is a judicial act, a judgment, which must be assumed to have been rightly rendered until the contrary appears. "This judicial officer, having a general cognizance of questions relating to the right of administration, and therefore competent to determine them, must necessarily be clothed with authority to consider and decide the sufficiency of the evidence presented to him for establishing the facts from which the right arises. The judgment

rendered by him must be conclusive of the facts necessary to sustain it, until it is reversed," &c. *Petigru* v. *Ferguson*, 6 *Rich. Eq.*, 384.

If, however, the order of administration should be violated and the wrong person appointed, it may be corrected. Most of the American cases hold that for some defined statutory cause, a grant of administration may be revoked. But how can the error be corrected and the proper man appointed? We know of no other way in which it may be done, except by revoking the first administration in order to make way for the right one. Possibly the first administration may be revoked, and the preferred person appointed to succeed him, by one and the same petition ; but there must be distinct allegations as to revocation in the petition, and the administrator made a regular party, and that issue heard and determined before another appointment can even be considered. The commission which the incumbent holds is a judgment of a competent court, and it cannot be impeached collaterally, and can only be set aside by a direct proceeding for that purpose. *Williams on Executors*, 493, 510, and notes; *Turner* v. *Malone*, 24 *S. C.*, 398; *Petigru* v. *Ferguson*, 6 *Rich. Eq.*, 384. In this last case, it is said, "There can be but one administration. And the conferring of the office with the authority appertaining to it, exhausts the whole subject and leaves nothing to be done of like kind, until the authority conferred has been revoked. It would be highly pernicious if such a thing could exist as two administrations going on at the same time. If there can be two, there can be as many as there are districts in the State," &c.

Now, make the application to this case, and we think it will appear that the judge was right in holding that for the purpose of revoking the first administration, the proceeding was irregular and insufficient. There was really no direct proceeding against the first administrator, neither his name nor the fact that he had been previously appointed was mentioned in the petition, which was simply for the appointment of the petitioner, precisely as if it were an original appointment. Nor do we think he was made a party to the proceeding, for it can hardly be supposed that the usual publication of notice to "kindred and creditors" was sufficient for that purpose. The incumbent administrator

was not brought into court by service or summons, and if he had been perfectly silent and allowed a second appointment to be made, it is certain that he would not have been bound by a judgment to which he was not a party. Nor do we think the filing of the *caveat* made him a party. It was no pleading in the case, and could not be regarded as an answer, so as to give the force of admissions as to what he omitted to insert in it. "A *caveat* is a caution, entered in the spiritual court, to stop probates, administrations, faculties, and such like, from being granted without the knowledge of the party that enters." *Williams on Executors,* 573.

It may be that the petitioner is entitled to have the first letters revoked and administration granted to himself. We are not, however, prepared to say that the fact of his being the heir at law of the testator, would alone be sufficient, in the case of a will, to entitle him to revoke the first letters and have others issued to himself. There may possibly be other facts in the case. But assuming that it would be sufficient, we think it should be made to appear regularly and in order. The revocation of the appointment of an administrator who is required to give bond and to assume important duties and responsibilities, is certainly a matter of consequence both to the person holding the commission and the estate represented; and we think should only be done, especially where the incumbent administrator stands upon his strict legal rights, upon full investigation, according to the established practice, by a direct proceeding for that purpose, with parties regularly summoned, issue joined, and the proofs offered, thus making a record.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.