160 U.S. 259 (1895)
CENTRAL RAILROAD COMPANY
v.
KEEGAN.
No. 878.
Supreme Court of United States.
Submitted December 8, 1894.
Decided December 23, 1895.
CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.
*262 Mr. Robert W. De Forest and Mr. George Holmes for plaintiff in error.
Mr. A.G. Vanderpoel for defendant in error.
*263 MR. JUSTICE WHITE, after stating the case, delivered the opinion of the court.
We held in Baltimore & Ohio Railroad Company v. Baugh, *264 149 U.S. 368, than an engineer and fireman of a locomotive engine running alone on a railroad, without any train attached, when engaged on such duty, were fellow-servants of the railroad company, hence that the fireman was precluded from recovering damages from the company for injuries caused, during the running, by the negligence of the engineer. In that case it was declared that: "Prima facie, all who enter the employment of a single master are engaged in a common service, and are fellow-servants... . All enter in the service of the same master to further his interests in the one enterprise." And whilst we in that case recognized that the heads of separate and distinct departments of a diversified business may, under certain circumstances, be considered, with respect to employés under them, vice-principals or representatives of the master, as fully and as completely as if the entire business of the master was by him placed under the charge of one superintendent, we declined to affirm that each separate piece of work was a distinct department, and made the one having control of that piece of work a vice-principal or representative of the master. It was further declared that "the danger from the negligence of one specially in charge of the particular work is as obvious and as great as from that of those who are simply coworkers with him in it; each is equally with the other an ordinary risk of the employment," which the employé assumes when entering upon the employment, whether the risk be obvious or not. It was laid down that the rightful test to determine whether the negligence complained of was an ordinary risk of the employment was whether the negligent act constituted a breach of positive duty owing by the master, such as that of taking fair and reasonable precautions to surround his employés with fit and careful coworkers, and the furnishing to such employés of a reasonably safe place to work and reasonably safe tools or machinery with which to do the work, thus making the question of liability of an employer for an injury to his employé turn rather on the character of the alleged negligent act than on the relations of the employés to each other, so that, if the act is one done in the discharge of some positive duty of *265 the master to the servant, then negligence in the act is the negligence of the master; but if it be not one in the discharge of such positive duty, then there should be some personal wrong on the part of the employer before he is liable therefor.
There is nothing in the later decision of this court in Northern Pacific Railroad Company v. Hambly, 154 U.S. 349, militating against the views expressed in the Baugh case. On the contrary, that case is approvingly referred to, (p. 359,) although said there to involve a different question from that which was in the Hambly case.
The principles thus applied, in the case referred to, are in perfect harmony with the rules enforced by the Supreme Court of the State of New Jersey, within whose territory the accident happened which gave rise to the present controversy.
In O'Brien v. American Dredging Co., 53 N.J. Law, 291, 297, O'Brien sought to hold the company liable for an injury sustained by him while employed as a deck hand on one of their dredges, at the time used in dredging the James River, near Richmond, under a contract with the United States government. The ground of liability alleged was that the injury had been caused by the negligence of another employé, one Cannon, who was called the "captain" of the dredge. Cannon was authorized to employ men to work on the dredge, subject to the approval of the general superintendent, (who had his headquarters at the home office of the company,) who had power to disapprove or discharge them; the duty of the captain was to operate the dredge in said dredging; plaintiff was employed by Cannon as a deck hand on the dredge, and his duty was to aid in the operation of the dredge; and Cannon had charge of the men so employed and they were under him. The court held that while Cannon was entrusted with some authority to employ the workmen, yet with respect to the operation of the dredge in the prosecution of defendant's business, he was not a general superintendent, but a mere foreman of the gang of workmen, engaged with them in the execution of the master's work. He was a superior, and they *266 were inferior workmen, but all were employed in a common operation, though in different grades of service. In the course of the opinion, on the question of the risks which, it must be contemplated, are assumed by one entering the service of another, the court said:
"Whether the master retain the superintendence and management of his business, or withdraw himself from it and devolve it on a vice-principal or representative, it is quite apparent that, although the master or his representative may devise the plans, engage the workmen, provide the machinery and tools, and direct the performance of work, neither can, as a general rule, be continually present at the execution of all such work. It is the necessary consequence that the mere execution of the planned work must be entrusted to workmen, and, where necessary, to groups or gangs of workmen, and in such case that one should be selected as the leader, boss, or foreman to see to the execution of such work. This sort of superiority of service is so essential and so universal that every workman, in entering upon a contract of service, must contemplate its being made use of in a proper case. He therefore makes his contract of service in contemplation of the risk of injury from the negligence of a boss or foreman, as well as from the negligence of another fellow-workman. The foreman or superior servant stands to him, in that respect, in the precise position of his other fellow-servants."
Applying the principles announced by this court and the Supreme Court of New Jersey to the facts of the case at bar, it is clear that O'Brien and Keegan were fellow servants. O'Brien's duties were not even those of simple direction and superintendence over the operations of the drill crew; he was a component part of the crew, an active coworker in the manual work of switching, with the specific duty assigned to him by the yardmaster of turning the switches. He was subordinate to the yardmaster who had jurisdiction over this and other drill crews, and it was the yardmaster who employed and discharged all the workers in the yard, giving them their general instructions, and assigning them to their duties. O'Brien's control over the other members of the drill crew *267 was similar to the control which a section foreman exercises over the men in his section; and, following its construction of the decisions of this court in the Baugh and Hambly cases, the Circuit Court of Appeals for the Eighth Circuit has held that a section foreman is a fellow servant of a member of his crew, and that one of the crew injured by the negligence of the foreman could not recover. Kansas & Arkansas Valley Railway v. Waters, 70 Fed. Rep. 28.
In Potter v. N.Y. Central & Hudson River Railroad, 136 N.Y. 77, employés of a railroad company, while switching cars in the company's yard, under the direction of a yardmaster, shunted a number of cars onto a track so that they collided with a car being inspected, and caused the death of the inspector. It was claimed that proper and reasonable care required that there should have been a brakeman on the front of the cars to control in an emergency their motion, when detached from the engine. In the absence of allegation of proof to the contrary, the court presumed that competent and sufficient servants were employed, and proper regulations for the management of the business had been established, and observed (p. 82): "It is quite obvious that the work of shifting cars in a railroad yard must be left in a great measure to the judgment and discretion of the servants of the railroad who are entrusted with the management of the yard. The details must be left to them, and all that the company can do for the protection of its employés is to provide competent coservants, and prescribe such regulations as experience shows may be best calculated to secure their safety."
We adopt this statement as proper to be applied to the case at bar. A personal, positive duty would clearly not have been imposed upon a natural person, owner of a railroad, to supervise and control the details of the operation of switching cars in a railroad yard; neither is such duty imposed as a positive duty upon a corporation; and if O'Brien was negligent in failing to place himself or some one else at the brake of the backwardly moving cars, such omission not being the performance of a positive duty owing by the master, the plaintiff in error is not responsible therefor.
*268 These conclusions determine both questions certified for our decision, and, accordingly, the first question is answered in the affirmative, and the second in the negative.
So answered.
MR. CHIEF JUSTICE FULLER, MR. JUSTICE FIELD, and MR JUSTICE HARLAN dissented.