PHŒNIX BRIDGE CO. v. CASTLEBERRY.

(Circuit Court of Appeals, Fourth Circuit. May 25, 1904.)

No. 499.

1. JUDGMENTS—COLLATERAL ATTACK—FEDERAL AND STATE COURTS.

The jurisdiction of a court to render a judgment is always subject to collateral attack and inquiry in a court of another sovereignty in which such judgment is relied on, and in such respect federal and state courts are foreign to each other, although sitting within the same state.

2. SAME—FEDERAL COURTS—FOLLOWING STATE DECISIONS.

The right of collateral attack on a judgment is a matter of general law as to which the decisions of the courts of a state are not binding on a federal court.

3. ADMINISTRATION OF ESTATES—PRIORITY OF JURISDICTION—SOUTH CAROLINA STATUTE.

Under 2 Code Civ. Proc. S. C. § 48, which provides that, "when any probate court shall have first taken cognizance of the settlement of the estate of a deceased person such court shall have jurisdiction of the disposition and settlement of all the personal estate of such deceased person to the exclusion of all other probate courts," that court first "takes cognizance of the settlement" of an estate which first grants letters thereon, which is the first judicial act in the proceeding, the petition being ex parte, and the issuance of citation thereon ministerial.

4. MASTER AND SERVANT—INJURY OF SERVANT—RULE GOVERNING MASTER'S DUTY.

The rule as to the duty of a master in respect to providing a safe place to work is not applicable to a case where a servant is injured by reason of defects in or insufficiency of a temporary structure, such as a scaffolding or framework for supporting heavy materials, which are appliances or instrumentalities by means of which the work is to be done.

5. SAME—APPLIANCES OR TEMPORARY STRUCTURES.

When, by the express or implied contract between the master and servant, the former undertakes to furnish the necessary tools or appliances, it is his duty to use ordinary care to see to it that such instrumentalities are safe and suitable; and as this duty, when it exists, is one of the absolute or personal duties, any servant to whom the master delegates it is pro hac vice a vice principal, for whose negligence the master is responsible. But where, by the express or implied contract, the master undertakes merely to furnish the materials needed for the construction of some appliance, which is to be constructed by the workmen themselves, as incident to the main work, the master's duty is performed if he furnishes suitable material and competent workmen, and the negligence of a foreman in charge of the construction by which a workman is injured is that of a fellow servant, for which the master is not liable.

¶ 2. State laws as rules of decision in federal courts, see note to Griffin v. Wheel Co., 9 C. C. A. 548; Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.

**6. SAME—RULE APPLIED—INSPECTION.**

A bridge company sent a force of men under a foreman to make repairs on a railroad bridge, consisting in part of replacing certain old parts with heavy steel girders. In doing this, it was necessary to construct on the spot wooden frames or bents to support the weight of the girders while they were being put in place, and they were made by the workmen as an incident to the work. Owing to the defective construction or condition of one of such frames, which had been erected three days before, a girder fell, and killed one of the workmen. *Held* that, in the absence of evidence that the materials furnished by the company were not in all respects suitable and sufficient to make a safe structure, it was not liable for the negligence of the foreman either in the construction of the frame or in failing to inspect it on the day of the accident.

In Error to the Circuit Court of the United States for the District of South Carolina, at Charleston.

J. S. Muller, for plaintiff in error.

Stanyarne Wilson and J. Q. Marshall, for defendant in error.

Before GOFF, Circuit Judge, and BRAWLEY and McDOWELL, District Judges.

McDOWELL, District Judge. S. J. Castleberry, an inhabitant of Spartanburg county, S. C., was, on August 26, 1901, killed while employed in repairing a bridge. His wife, Effie Castleberry, petitioned the probate court of Richland county (in which the decedent had no estate and of which he was not a resident) for letters of administration on August 29, 1901. Citation was issued by that court on the same day, and letters of administration were granted Effie Castleberry on September 19, 1901. On August 30, 1901, Jas. H. Castleberry, the father of the decedent, filed his petition for letters of administration in the probate court of Spartanburg county. Citation issued the same day, and letters of administration were granted on September 16, 1901. On September 17, 1901, Jas. H. Castleberry instituted the present action in a state court of South Carolina, which was removed to the federal court; and on September 21, 1901, Effie Castleberry, in the same state court, instituted her suit for the same cause of action against the plaintiff in error here. On December 4, 1902, Effie Castleberry applied for and obtained from the probate court of Richland county an order revoking the letters granted her by that court, in which order is a recital that the court had acted under a misapprehension, and had not had the right to issue letters of administration. And on December 9, 1902—the day the trial of the case at bar was commenced in the federal Circuit Court, and just before it was commenced—Effie Castleberry dismissed her action against the plaintiff in error here. The jury rendered a verdict for the plaintiff below and judgment was entered in accordance therewith.

It is contended for the plaintiff in error that the plaintiff below did not have title as administrator at the time of the institution of this action. The trial court decided this question against the plaintiff in error, and this is the first error assigned here. The statute law of South Carolina bearing on the question here presented is as follows (2 Code Civ. Proc.):

"Sec. 37. Every judge of probate in his county shall have jurisdiction in all matters, testamentary and of administration, in business appertaining to

minors and the allotment of dower, in cases of idiocy and lunacy, and of persons non compotes mentis."

"Sec. 39. The probate of the will and the granting of administration of the estate of any person deceased shall belong to the judge of probate for the county in which such person was last an inhabitant; but if such person was not an inhabitant of this state, the same shall belong to the judge of probate in any county in which the greater part of his or her estate may be.

"Sec. 40. All proceedings in relation to the settlement of the estate of any person deceased shall be had in the probate court of the county in which his will was proved, or administration of estate was granted."

"Sec. 48. When any probate court shall have first taken cognizance of the settlement of the estate of a deceased person, such court shall have jurisdiction of the deposition [disposition] and settlement of all the personal estate of such deceased person to the exclusion of all other probate courts."

"Sec. 49. The jurisdiction assumed by any probate court in any case, so far as it depends on the place of residence or the location of the estate, shall not be contested in any suit or proceeding whatever, except in an appeal from the probate court in the original case, or when the want of jurisdiction appears on the record."

Rev. St. § 2027 (1901):

"The judge of probate shall grant administration in the following manner: After requiring the person or persons applying therefor to file a petition in writing, he shall issue a citation to the kindred or creditors of the intestate or person deceased, to show cause, if any they have, why administration shall not be granted to the person or persons applying therefor," etc.

The alleged invalidity of the grant of letters of administration to the plaintiff below by the Spartanburg court is founded on section 48 of volume 2, Code Civ. Proc., supra.

It is a settled rule of law of the state courts of South Carolina that the first grant of letters of administration by a domestic probate court—even when made by a court not having jurisdiction of the particular estate in question—cannot be collaterally attacked. Petigru v. Ferguson, 6 Rich. Eq. 380. See, also, Turner v. Malone, 24 S. C. 398; Ex parte Crafts, 28 S. C. 281, 5 S. E. 718. And this rule was followed by at least two of the subordinate federal courts in respect to a judgment of a probate court of the state in which these federal courts were sitting. Holmes v. Oregon & C. R. Co. (D. C.) 5 Fed. 523; Id. (C. C.) 9 Fed. 229. But we regard these opinions as overruled by the Supreme Court in later cases cited herein below. However, the courts of the state in which a federal court sits are not domestic courts quoad the federal court. The two courts are created by and exist under different governments. Swift v. Meyers (C. C.) 37 Fed. 43; Hekking v. Pfaff, 91 Fed. 60, 33 C. C. A. 328, 43 L. R. A. 618; Pennoyer v. Neff, 95 U. S. 732, 24 L. Ed. 565. Hence the federal court sitting in South Carolina should, on collateral attack, examine the question of the jurisdiction of a South Carolina state court which rendered a judgment relied on in such federal court. That there is a right of collateral attack for want of jurisdiction on a judgment of a court of another sovereignty is the rule prevailing in the majority of the states, not excepting South Carolina. McCreery v. Davis, 44 S. C. 195, 22 S. E. 178, 28 L. R. A. 655, 51 Am. St. Rep. 794; 2 Black on Judgments (2d Ed.) § 897; 12 Am. & Eng. Ency. (1st Ed.) 148 et seq. And beyond question this is the rule laid down by the Supreme Court of the United States, which we are required to follow. Thompson v. Whitman, 18 Wall. 457, 21

L. Ed. 897; Simmons v. Saul, 138 U. S. 448, 11 Sup. Ct. 369, 34 L. Ed. 1054; Guaranty Co. v. Railroad Co., 139 U. S. 147, 11 Sup. Ct. 512, 35 L. Ed. 116, and cases therein cited.

If the above-mentioned decisions in Petigru v. Ferguson, Ex parte Crafts, etc., could be considered as decisions of a matter of local law, we should be bound to follow them. But the right of collateral attack on a judgment for want of jurisdiction is a question of general law. The plaintiff in error is relying on a common-law right. Galpin v. Page, 3 Sawy. 93, Fed. Cas. No. 5,206; Chicago v. Robbins, 2 Black, 419, 17 L. Ed. 298; Olcott v. Supervisors, 16 Wall. 689, 21 L. Ed. 382.

Again, if the South Carolina decisions above mentioned could be considered as construing the statute law of that state, we should be bound by them. But they were not so intended. They merely lay down the rule of common law prevailing in the South Carolina state courts, where it is proposed to collaterally attack in such courts a first grant of letters of administration made by a South Carolina probate court. So far as we are advised, the Supreme Court of South Carolina has never construed section 48 of the Code of Civil Procedure in respect to the question here made. It follows that we must now construe that statute.

In the opinion of the learned trial court it is said:

"In the case at bar the probate court of Spartanburg county was the first court which had taken cognizance of the settlement of the estate of Castleberry. It first issued the letters granting plaintiff title, and when the Richland court acted there was nothing to act on. The petitions were ex parte. They decided nothing. The effective action was the grant."

The language of section 48 is peculiar. If it had declared that the court in which the petition is first filed, or which first issued citation, should have exclusive jurisdiction, we should have a different question. But the language is "the court which first takes cognizance of the settlement of the estate." Section 40 of the Code of Civil Procedure reads:

"All proceedings in relation to the settlement of the estate of any person deceased shall be had in the probate court of the county in which his will was proved, or administration of estate was granted."

Apparently the theory of the Legislature was that the grant of letters is the first action of a court which may be considered as "taking cognizance of the settlement" of an estate. The filing of the petition is ex parte. The issue of citation is a ministerial act in essence, made obligatory by section 2027 of the Revised Statutes, and does not involve the exercise of discretion, or any strictly judicial action. The first judicial act of the probate court is the grant of letters of administration. Such action is beyond doubt taking cognizance of the settlement of the estate. And it is the first act that can be properly so considered. We are of opinion that the jurisdiction of the Spartanburg court was not defeated by the subsequent grant of letters by the Richland court. It follows that the grant by the Richland court was made without jurisdiction, and was void ab initio. The plaintiff below, therefore, had title as administrator at the institution of this action.

Finding no error so far in the rulings of the trial court, we must now

state the facts on which are based the remaining assignments of error. The Phœnix Bridge Company, a Pennsylvania corporation, had undertaken to make certain repairs of a railroad bridge over the Congaree river in South Carolina. The business of the company is divided into two departments, and this work belonged to the "erection department." Neither the superintendent nor the assistant superintendent of this department left the home office. The work in question was in immediate charge of one Simmons, who was the foreman. Castleberry was a workman employed by and under the direction of Simmons. The repairs to be made consisted in part in replacing certain old parts of the bridge with heavy steel girders. In order to do this, it was first necessary to erect certain wooden frames or bents to sustain the weight of the steel girders while being put in place. These wooden frames had been made on the spot by the bridge force under the direction of Simmons, and had been on the Friday preceding the accident, which occurred on Monday, August 26, 1901, put in place and held there by guy ropes. On the following day heavy rain prevented work. The next day (Sunday) was clear and warm. On Monday Simmons ordered Castleberry to take up the old track under the steel girders, which were suspended above him, and which were sustained by the wooden frames. While in this situation the frames gave way and toppled over, and the girders fell and killed Castleberry. There was evidence tending to show that under the girders was not a safe place to work, in the absence of cribs to support the girders and take the strain off the wooden frames, and that cribs were not on this occasion used. Also that the frames had not been constructed according to the plans furnished by the defendant company, and that they were unsafe. Also that the frames were not properly guyed. There was also evidence that the rain on the Saturday preceding the accident, which contracted the guy ropes, and the heat of the sun on Sunday, which loosened the ropes, had disturbed the placing of the frames, and that on Monday no inspection of the condition of the frames was made, the guy ropes were not tightened and the frames were not plumbed. There was evidence introduced by the defendant below tending to contradict the evidence of the plaintiff below. The remaining assignments of error are to certain parts of the charge given by the trial judge and to his refusal to give certain instructions requested by the defendant below. It is unnecessary to state in detail these assignments. The instructions given the jury were based on the theory that the defendant was liable for want of ordinary care in furnishing safe and proper instrumentalities for carrying on the work, or for want of ordinary care in inspecting the condition of such instrumentalities. Counsel for the defendant below excepted to the parts of the charge covering these points, and also to the refusal of the court to give certain instructions based on the theory that Simmons and Castleberry were fellow servants. It was evidently the plan of work that the new steel girders should be temporarily suspended, or otherwise supported, above their final resting place, and that thereafter the workmen must, going under the steel girders thus supported, remove some of the old parts of the bridge.

It is the established rule of the federal courts that a mere foreman— not the head of a separate department—is a fellow servant of the work-

men under him, or a vice principal, dependent on the nature of the duties such foreman is discharging at the time of the negligent act with which he is charged. If he is discharging one of the absolute or personal duties of the master, he is a vice principal, and his negligence is imputable to the master. Baltimore & Ohio R. Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772; Northern Pac. R. Co. v. Hambly, 154 U. S. 349, 14 Sup. Ct. 983, 38 L. Ed. 1009; Central R. Co. v. Keegan, 160 U. S. 259, 16 Sup. Ct. 269, 40 L. Ed. 418; Northern Pac. R. Co. v. Peterson, 162 U. S. 346, 16 Sup. Ct. 843, 40 L. Ed. 994; Northern Pac. R. Co. v. Charless, 162 U. S. 359, 16 Sup. Ct. 848, 40 L. Ed. 999; Martin v. Atchison R. Co., 166 U. S. 399, 17 Sup. Ct. 603, 41 L. Ed. 1051; Alaska Min. Co. v. Whelan, 168 U. S. 86, 18 Sup. Ct. 40, 42 L. Ed. 390; 12 Am. & Eng. Ency. (2d Ed.) p. 933. The injury to Castleberry was caused either by the insufficiency of the supports for temporarily holding the steel girders, or because of a want of proper inspection of their condition. In cases such as we have here— where the injury results from the use of some device or appliance intended for temporary use—it is frequently difficult to determine whether the rights of the parties are to be determined by reference to the duty of the master in respect to providing a safe place in which to work or to the master's duties in respect to appliances and instrumentalities for carrying on the work. Under the circumstances of this case we think that the rule as to providing a safe place is inapplicable. In Thomas on Negligence, at page 790, it is said:

"A staging or scaffolding for workmen is not a place in which work is to be done, within the rule requiring the master to furnish his servants a suitable and safe place in which to work, but it is an appliance or instrumentality by the means of which the work is to be done."

See, also, 20 Am. & Eng. Ency. (2d Ed.) p. 81, note 7, where it is said, citing Butler v. Townsend, 126 N. Y. 105, 26 N. E. 1017; Whallon v. Sprague Co., 1 App. Div. 264, 37 N. Y. Supp. 174; Stewart v. Ferguson, 34 App. Div. 515, 54 N. Y. Supp. 615:

"Under these decisions, what is temporary must be considered as an 'appliance,' and only what is permanent as a 'place.'"

It has frequently been said that it is one of the absolute and personal duties of the master to furnish reasonably safe and suitable appliances. This statement cannot be considered as universally true. We think a better statement of the rule is as follows: When, by the express or implied contract between the master and his servant, the former undertakes to furnish the necessary tools or appliances, it is the master's duty to use ordinary care to see to it that such instrumentalities are safe and suitable. And as this duty, when it exists, is one of the absolute or personal duties, any servant to whom the master delegates it is pro hac vice a vice principal, for whose negligence the master is liable. It frequently happens that by the express or implied contract the master undertakes merely to furnish the materials needed for the construction of some appliance, and that the workmen themselves, as incident to the main work, construct the appliance. In many such cases it has been said that the master's duty is performed if he furnishes suitable material and competent workmen. In 20 Am. & Eng. Ency. (2d Ed.) at page 82, it is said:

"Where the servant, as a part of his work, is to construct a scaffold or other structure out of materials furnished by the employer, and the employer furnishes proper materials for that purpose, but the servant, by negligence either in putting the materials together or in selecting them, erects an unsafe appliance, which results in injury to another servant, no negligence can be imputed to the master, and he is not liable for the injury. In such cases the master's responsibility ends with the selection of suitable material and suitable men for the work."

Again, in 12 Am. & Eng. Ency. (2d Ed.) p. 956, it is said:

"But where the duty of erecting the necessary scaffold or staging is devolved upon workmen as a part of or as incident to the work which they are to perform, they are all fellow servants, and the master is not liable to one of them for the negligence of his fellow workman in the construction of the scaffold. * * *"

The numerous cases referred to in the Encyclopædia have been examined, and we find them to fully warrant and support the above-quoted statements. It is true that in the majority of the cases cited in support of this rule the defective structure was a simple scaffold or staging. But we are unable to find any line of demarcation between such cases and the case at bar. Here the frames for the support of the steel girders were constructed on the spot by the bridge force as a part of the work. The construction of these frames was merely a detail of the work. The duty performed by Simmons in directing the construction of the frames or bents did not differ from that performed by him in regard to the other details of the work. If these frames had been constructed elsewhere, and furnished as a completed instrumentality, a different rule would apply. As the employer here only undertook to furnish the materials and the plan, and as the bridge force was to construct the supports, we are constrained to hold that in such construction Simmons was not a vice principal. If his negligence in constructing insufficient supports caused the injury, it was the negligence of a fellow servant, for which the employer is not liable.

In the case at bar it is clear that the duty of furnishing proper materials for constructing the device needed to temporarily support the steel girders rested on the master. There was evidence in this case tending to show that the frames were not sufficient without cribs or blocks, and that cribs were not used. But there was no evidence that such cribs were not furnished. So far as the record shows, the necessary blocks may have been furnished, and the failure to use them may have been simply the result of negligence on the part of Simmons, the foreman. The burden of proving negligence rested on the plaintiff, and, in the absence of affirmative evidence that the defendant failed to furnish the blocks, there could not properly have been a verdict for the plaintiff on this ground.

There was evidence, also, tending to show that the injury may have been caused by want of proper inspection of the condition of the frames and guy ropes. If the duty of inspection in this respect rested on the master, Simmons, the foreman, was, as to such duty, a vice principal. But we fail to find a sufficient reason for holding that the master was here charged with the duty of inspection. Where the master furnishes an appliance, he is charged with the duty of inspecting its condition. But where, as here, the construction of the appliance devolved on the workmen, there was no more reason for requiring inspection of its

condition than of requiring inspection of any other part of the work. So far as we have found, whenever the authorities discuss the duty of the master in respect to inspection, it is in regard to the safety of the place of work or the condition of appliances and instrumentalities furnished by the master.

The charge given the jury was based on the theory that the defendant had undertaken to furnish the appliances needed for the temporary support of the girders, and that a want of ordinary care in constructing or inspecting such appliances made the defendant liable. From what we have said it follows that we are of opinion that the charge was erroneous. We must, therefore, reverse the judgment of the trial court and remand the cause for proceedings not inconsistent with this opinion.

Reversed.