COLLINS *v.* JOHN W. DANFORTH COMPANY.*

MASTER AND SERVANT; NEGLIGENCE; FELLOW SERVANTS.

1. Where it is a part of the duty of the servant to furnish the appliances necessary to successfully carry out his work, and the duty devolves upon the master of furnishing the material from which the appliances are to be constructed, if the master furnishes sufficient material of good quality, and the servant is injured through the negligent and defective construction of the appliances, in the absence of the commission of some personal wrong by the master, negligence cannot be imputed to him, and he cannot be held liable for the injury.

2. A master is liable for the negligence of his foreman, resulting in an injury to one of his servants, only when the foreman is performing duties which the master owes to his servant; in other matters the foreman, in his relation to the other servants, is not a vice principal, but a fellow servant.

3. In an action by a steam fitter against his employer, for injuries received by the breaking of a plank across a scaffolding, on which plank the plaintiff was standing while passing pipes from one side of the corridor of a building to the other, the trial court properly directs a verdict for the defendant, where it appears that it was the duty of the steam fitters in the defendant's employ to erect their own scaffolding from material furnished by the defendant; that the scaffolding in question had been erected by a fellow servant of the plaintiff while the plaintiff was at work in another part of the building; that the foreman directed the plaintiff to use it in passing the pipes; and at the time there were other planks on the floor which might

*Master and Servant.*—For a presentation of cases on the duty of master to furnish safe appliances, as affected by fact that defective appliances are prepared by fellow servants, see note to Haskell v. Cape Ann Anchor Works, 4 L.R.A.(N.S.) 220.

have been used by the plaintiff for strengthening the runway of the scaffold and making it safe.

No. 2250. Submitted February 10, 1911. Decided March 13, 1911.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia, on a verdict directed by the court, in an action to recover damages for personal injuries.                    *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an action brought by appellant, Ernest M. Collins, plaintiff below, to recover damages from defendant corporation, John W. Danforth Company, of Buffalo, New York, for personal injuries sustained while in its employ. It appears that for seven or eight years prior to the date of the accident (August 25, 1908), the plaintiff had followed the occupation of a steamfitter's helper. At the time of the accident, he was employed by defendant company to assist in installing a steam-heating system in the United States Patent Office, in this city. The work, in part, consisted of extending pipes throughout the building. For some weeks prior to the time of the accident, plaintiff had been working in what is known as the west corridor. In the east corridor a scaffold had been constructed by one of the steam fitters, named Cosgrove, for use by him and his associates in adjusting pipes and in passing from one side of the corridor to the other. Cosgrove, before completing the work at this point, was sent to another part of the city. The scaffold was allowed to remain, but the planks on top, forming the runway, were all removed by the steam fitters but one.

Some three or four days after Cosgrove left, the foreman in charge directed plaintiff, with others, to complete the work in the east corridor. Among other things, pipes had to be conveyed from one side of the corridor to the other, and, for this purpose, the scaffold was used. While passing a heavy pipe across, the plaintiff was standing upon the single plank left on the scaffold, which broke, and he fell a distance of about

15 feet to the floor, sustaining the injuries complained of in this action.

It appears from the record that it was the duty of the steam fitters to erect their own scaffolding; that sufficient material for the purpose had been furnished by defendant company prior to the erection of the scaffold by Cosgrove, and that, at the time the accident occurred, in addition to the one in use, there were four planks on the floor of the corridor, which could have been used for strengthening the scaffold or making it safe. It further appears that the plank which broke had been used as a runway for workmen, and that the scaffold, in all other particulars, was well constructed and perfectly safe. When all of the evidence had been introduced, the court, on motion of counsel for defendant, instructed the jury to return a verdict for defendant. From the judgment entered thereon, the case comes here on appeal.

*Mr. Wilton J. Lambert, Mr. J. Wilmer Latimer,* and *Mr. Rudolph H. Yeatman* for the appellant.

*Mr. Charles A. Douglas, Mr. Gibbs L. Baker, Mr. Hugh H. Obear,* and *Mr. Charles C. Miller* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

The evidence presents no issue for the jury on the material facts upon which this case must turn. The witnesses for both plaintiff and defendant agree that it was the duty of the steam fitters to erect their own scaffolding; that sufficient lumber of good quality for this purpose had been furnished by defendant; that the scaffold had been erected by one of the steam fitters as part of his duties, and according to the custom of the trade; that at the time plaintiff and his associates appropriated and used the scaffold, sufficient planks were lying within sight and easy of access to have made the structure safe, if, on the evidence, it can be held to have been unsafe; that plaintiff had observed the scaffold being used by his fellow workmen for

some time prior to the accident, and that its condition was not concealed by defendant, but was open to the observation and inspection of plaintiff.

It is contended by counsel for plaintiff that, inasmuch as Cosgrove left the scaffold which he had constructed, and the foreman directed plaintiff, with others, to use it in passing pipes from one side of the corridor to the other, defendant, through the action of its foreman, assumed responsibility for the safety of the place where plaintiff was directed to work, and that, if the appliances afforded were defective, liability for the injury occasioned thereby attaches. Counsel for plaintiff also insist that, inasmuch as plaintiff was injured while acting in obedience to the orders of the foreman, defendant company is liable. On the other hand, it is contended by counsel for defendant that all the duty that was imposed upon defendant was to furnish sufficient materials with which to construct a suitable scaffold; that it was not only the duty of Cosgrove to construct such scaffolding as was necessary to carry out the work assigned him, but it was the duty of the subsequent employees, among whom was the plaintiff, to construct sufficient scaffolding to meet their requirements; and that if, instead of constructing a scaffold, they elected to appropriate the one left by Cosgrove, and injury was sustained by reason of a defect therein, when there was sufficient material present to have made the structure safe, there can be no recovery.

The liability of defendant depends upon whether or not it performed its full duty in furnishing the steam fitters and their assistants sufficient materials of good quality with which to erect the scaffold. Since it was a part of the duty of the steam fitters to erect their own scaffolding, the duty of the employer ended with the furnishing of good and sufficient material for that purpose. It is not material that the scaffold had been constructed by Cosgrove, a fellow servant, some days before plaintiff was assigned to work in that portion of the building. When plaintiff and his associates elected to use the scaffold Cosgrove had left, they waived the privilege they had of constructing a new one, or of strengthening this one from

the materials furnished. The situation, therefore, is the same as it would have been had they repaired the scaffold or constructed a new one, and this accident had resulted from a defect therein.

It is well settled by the great weight of authority that where it is a part of the duty of the servant to furnish the appliances necessary to successfully carry out his work, and the duty devolves upon the master of furnishing the materials from which the appliances are to be constructed, if the master furnishes sufficient material of good quality, and the servant is injured through the negligent and defective construction of the appliances, in the absence of the commission of some personal wrong by the master, negligence cannot be imputed to him, and he cannot be held liable for the injury. *Chambers* v. *American Tin Plate Co.* 64 C. C. A. 129, 129 Fed. 561; *Kimmer* v. *Weber,* 151 N. Y. 417, 56 Am. St. Rep. 630, 45 N. E. 860; *Armour* v. *Hahn,* 111 U. S. 313, 28 L. ed. 440, 4 Sup. Ct. Rep. 433; *Conner* v. *Pioneer Fire Proof Constr. Co.* 29 Fed. 629; *Noble* v. *C. Crane & Co.* 94 C. C. A. 423, 169 Fed. 55; *McCone* v. *Gallagher,* 16 App. Div. 272, 44 N. Y. Supp. 697; *Ross* v. *Walker,* 139 Pa. 42, 23 Am. St. Rep. 160, 21 Atl. 157, 159; *O'Connor* v. *Rich,* 164 Mass. 560, 49 Am. St. Rep. 483, 42 N. E. 111.

It is insisted, however, that as plaintiff was not working with Cosgrove on that part of the building where the scaffold was constructed, it was the duty of defendant to inspect the scaffold before assigning plaintiff to work at that point. With this contention we do not agree. Plaintiff, under the circumstances, is certainly in no more favorable position than he would have been had he been employed subsequent to the erection of the scaffold, and then injured by reason of its negligent construction by Cosgrove. In *O'Connor* v. *Rich,* supra, the plaintiff was injured by the breaking of a plank of a temporary staging which it was the duty of the servants to build. It was undisputed that the defendant employer had furnished, as in this case, a sufficient number of planks with which to construct a staging. After the construction of the staging,

plaintiff was employed to work where he was required to either erect new staging or use the one already constructed. He used the one he found in place, and was injured by reason of a defect in its construction. On this state of facts, the court said: "But it appears that, although he had previously worked for a considerable time upon the building, he was away working for another person four days before the day of the accident, and this staging was erected a day or two before his last engagement in the defendant's service began. Under these circumstances the question is whether the defendant is liable to him for the previous negligence of a servant in doing work which may properly be intrusted to servants. We are of the opinion that an employer under such circumstances owes one who is about to enter his service no duty to inspect all the work which has been done by his servants previously, and which ordinarily may be intrusted to them without liability to their fellow servants for their negligence. If he owes no such duty, the risk of accident from previous negligence of servants in their own field is one of the ordinary risks of the business which the employee assumes by virtue of his contract on entering the service. See Moynihan v. Hills Co. 146 Mass. 586, 591, 4 Am. St. Rep. 348, 16 N. E. 574. This point was expressly decided in Killea v. Faxon, 125 Mass. 485,—a case very similar to this in its facts. See Wilson v. Merry, L. R. 1 H. L. Sc. App. Cas. 326, 19 L. T. N. S. 30."

Counsel for plaintiff attempt to distinguish this case by treating the scaffold as a place for the workmen to stand on while adjusting pipes across the corridor, instead of a place to cross upon from one side of the corridor to the other. It was used for both, but the evidence is undisputed that it was used by workmen as a foot passage from one side of the corridor to the other, over which materials were carried. The distinction, however, is not important, since the structure was regarded by the steam fitters as a necessity in performing their work. It was built by one of them,—a fellow servant of plaintiff engaged in the same field of employment,—and used generally by them in prosecuting their work. It was constructed

by Cosgrove and adopted by plaintiff and his associates without any direction on the part of defendant. The evidence shows that the frame work of the scaffold was strong and substantially built, and the accident was caused by plaintiff and his associates carelessly using a single plank on the runway, when there were others present, furnished by defendant for that purpose, which could have been used to make it safe.

But it is insisted by counsel for plaintiff that the accident occurred as the result of the negligent act of defendant's foreman in ordering plaintiff and his associates to carry the pipes across the scaffold without first inspecting it to determine as to its safety, and that, inasmuch as the foreman was in charge of the work, defendant is responsible for the act of the foreman. If defendant had erected the scaffold, or it had been erected under its supervision or direction, a different case would be presented. But it must be remembered that it was no part of defendant's duty to the steam fitters to erect the scaffold, and defendant assumed no responsibility in the premises. When the foreman directed the steam fitters and their helpers to carry the pipes across the scaffold, he had a right to assume that they had satisfied themselves of its safety. He was under no obligation to inspect it for them. It was their appliance, not his or defendant's. Responsibility for the acts of the foreman in relation to his fellow servants can only be imputed to the master when the foreman properly represents the master in carrying out the legal or contractual obligations which the master owes to his servants. When acting in that capacity, the foreman becomes a vice principal; in other respects he is merely a fellow servant. While it is the duty of the foreman to generally superintend the work and give directions as to how it shall be performed, he can do nothing in the absence of authority from the master, or outside of the duty which the master owes to his servants, that will shift responsibility from the servants to the master. Within these limitations he can give no direction to the fellow servants that will enlarge the master's responsibility to them. The master is liable for the negligence of the foreman only when he is performing the duties

which the master owes to his servants; in other matters the foreman, in his relation to the servants, is not a vice principal, but a fellow servant.

In *Phœnix Bridge Co.* v. *Castleberry,* 65 C. C. A. 481, 131 Fed. 175, the court, in considering the duties of a foreman and his relation to the master, said: "It is the established rule of the Federal courts that a mere foreman—not the head of a separate department—is a fellow servant of the workmen under him, or a vice principal, dependent on the nature of the duties such foreman is discharging at the time of the negligent act with which he is charged. If he is discharging one of the absolute or personal duties of the master, he is a vice principal, and his negligence is imputable to the master. *Baltimore & O. R. Co.* v. *Baugh,* 149 U. S. 368, 37 L. ed. 772, 13 Sup. Ct. Rep. 914; *Northern P. R. Co.* v. *Hambly,* 154 U. S. 349, 38 L. ed. 1009, 14 Sup. Ct. Rep. 983; *Central R. Co.* v. *Keegan,* 160 U. S. 259, 40 L. ed. 418, 16 Sup. Ct. Rep. 269; *Northern P. R. Co.* v. *Peterson,* 162 U. S. 346, 40 L. ed. 994, 16 Sup. Ct. Rep. 843; *Northern P. R. Co.* v. *Charless,* 162 U. S. 359, 40 L. ed. 999, 16 Sup. Ct. Rep. 848; *Martin* v. *Atchison, T. & S. F. R. Co.* 166 U. S. 399, 41 L. ed. 1051, 17 Sup. Ct. Rep. 603; *Alaska Treadwell Gold Min. Co.* v. *Whelan,* 168 U. S. 86, 42 L. ed. 390, 18 Sup. Ct. Rep. 40."

From a review of the cases, the general rule seems to be that all employees of a corporation, except heads of separate departments, are fellow servants. When one fellow servant is delegated by the master to represent him in directing the actions of other employees, to the extent only that he performs the duties devolving upon the master toward such employees does he become a vice principal. When an employee is thus substituted for the master, and acts within these limitations, the master is liable to the fellow servants for his acts of negligence to the same extent as if he had performed the acts or had been guilty of the negligence himself. In *Baltimore & O. R. Co.* v. *Baugh,* supra, Mr. Justice Brewer quoted with approval from the opinion of the supreme court of Kansas in the case of *Atchison, T. & S. F. R. Co.* v. *Moore,* 29 Kan. 632, as

follows: "A master assumes the duty towards his servant of exercising reasonable care and diligence to provide the servant with a reasonably safe place at which to work, with reasonably safe machinery, tools, and implements to work with, with reasonably·safe materials to work upon, and with suitable and competent fellow servants to work with him; and when the master has properly discharged these duties, then, at common law, the servant assumes all the risks and hazards incident to or attendant upon the exercise of the particular employment or the performance of the particular work, including those risks and hazards resulting from the possible negligence and carelessness of his fellow servants and coemployees. And at common law, whenever the master delegates to any officer, servant, agent, or employee high or low, the performance of any of the duties above mentioned which really devolve upon the master himself, then such officer, servant, agent or employee stands in the place of the master and becomes a substitute for the master,—a vice principal,—and the master is liable for his acts or his negligence to the same extent as though the master himself had performed the acts or was guilty of the negligence. But at common law, where the master himself has performed his duty, the master is not liable to any one of his servants for the acts or negligence of any mere fellow servant or coemployee of such servant, where the fellow servant or coemployee does not sustain this representative relation to the master."

In other words, did the negligent act, if there was such, consist in a breach of a positive duty owing by defendant to plaintiff? We think not. This test, which we think is the proper one, makes the liability of the master to his servant depend on the character of the alleged negligent act, instead of the relation of the servants to each other. Hence, if the act is one performed in the discharge of a positive duty of the master to the servant, and there is· negligence in the act, it is the negligence of the master; but if the act is not performed in the discharge of a duty devolving upon the master,

there can be no liability, unless he has been guilty of some personal wrong which contributed directly to produce the injury.

Applying this rule to the case at bar, the scaffold was constructed by the steam fitters to enable them to move rapidly and to easily perform their work. The act of the foreman in directing the conveyance of the pipes across this structure from one side of the corridor to the other did not differ from that performed by him in regard to other details of the work involved in installing the pipes and heating fixtures by the workmen. The scaffold was the appliance of the workmen, erected for this purpose, and the foreman was only requiring them to convert it to the use for which they had constructed it. If the scaffold had been constructed elsewhere, and furnished as a complete instrumentality by defendant, or had been constructed under the direction and supervision of defendant, we would have a different case. But as the defendant only undertook to furnish the materials necessary for carrying on the work, and it was the duty of the workmen to construct their own appliances, and they assumed that responsibility in the construction of the scaffold, if the foreman was guilty of negligence in giving directions in connection with the use of the scaffold, whereby plaintiff was of necessity required to use the structure, and the injury resulted from its use, it was attributable to the foreman. It would be, in that event, not the negligence of defendant, but of a fellow servant, that caused the injury.

The obligation imposed upon the master to furnish his servants with a reasonably safe place in which to work, and supply them with proper and safe appliances, does not enter into this case. The scaffold was neither a part of the place nor an appliance furnished by defendant. The accident was not due to the unsafe condition of the place, nor to an insufficient amount of good material, nor to defendant's failure to supply all the appliances which it was obliged to furnish. The fault lay wholly with plaintiff and his fellows in erecting, in the performance of their duties, a perfectly safe appliance, which,

through their negligence, was permitted to become unsafe, and for the condition of which defendant was in no way responsible.

There being no evidence to sustain a verdict, no error was committed in directing the jury to find for defendant. The judgment is therefore affirmed with costs, and it is so ordered.

*Affirmed.*

An application for a writ of error to the Supreme Court of the United States was allowed.