CLLEN, J.
—The action is servant against master, to recover dan>es for personal injuries claimed to have been caused by the defeíant’s negligence. It appears from the evidence that the Post.Telegraph Building was in the course of erection in the city of Hr York. The defendant was engaged in the construction of the e/ators in that building. The plaintiff was a workman in defen,nt’s employ, and had worked about the building for some weeks On the occasion of the accident he was sent to the seventh story ithe building with one Cantilon, a millwright, also in the defencit’s employ, to take measurements at' the hatchways or openin where the elevators were to be placed and operated. The constnion of the building had so far progressed' that the iron girders; this story were in place, but the floor had not been laid. The fle was to consist of tiled arches turned between the iron beams, he work of laying the floor was being done by the Pittsburgh Ira-Gotta Company. In order to prosecute the work, the worlctneff that company made a scaffold between the beams to serve a <tble purpose,— as a center on which to turn the arches and. sus'a the tiles until the mortar set, and as a scaffold on which tiworkmen stood. In going from the hatchway at the *520 south side of the building to another opening, at the north side, the plaintiff stepped off the iron beam, onto the scaffotd, which broke, causing him to fall and severely injure himself. There was evidence given tending to show that the planks used by the terracotta company were insufficient and unfit for the purpose, and that Cantilon had called the attention of Williams, who was defendant’s superintendent on the work, to the fact, some two weeks before the accident. On the day of the accident, Williams told Cantilon “to be careful,—not to take any chances,—and, if the scaffolding was laid and secure,” to take plaintiff with him and make the measurements. Cantilon went to the seventh story, and found the scaffold not yet laid. On the second visit he found it com pleted, and plaintiff and he proceeded to make the measurements At the close of the plaintiff’s case the defendant moved to dismis the complaint on the ground of contributory negligence of tie plaintiff, and that no negligence upon the part of the defendait had been established. The motion was denied, and an exceptim to that ruling raises the only question involved on this appalThe first ground, that of contributory negligence of the plaintiff, we think without merit; but the second ground, in onr judgmnt, was well taken.
For the appellant it is contended that the question presentí! is not that of a place to work, but that of an appliance with wich to work. The respondent contends that the question is wheher the master provided a reasonably safe place for the plaintiff to io his work. We think, on either assumption, the same concltsim results. While the rule is well settled that the master must povide the servant a reasonably safe place to do his work, it is pin that this rule only applies where the place is either under the cntrol of the master, or, in the ordinary conduct of the work, shcld have been under his control. In a factory, a mill, a shop, or eep a mine or excavation, occupied or worked by the master, it inis duty to take reasonable care that the place is secure and saffor his servant, and the servant has the right to assume that the mter has discharged his duty in that respect. But, where the mter sends his workmen to work on the premises or property of ofirs, it cannot be said to be his duty to provide a safe place fothe servant, for the place is not in any way provided by the ititer. I cannot find any reported decision in which it has been attepted to enforce liability in such a case. The defendant here ll no share in the construction of the building, save to erect the eletors. Its implied license on the premises was confined to such pts as were necessary for it to occupy in the work, or in obtainin^ccess thereto; but it had no control over, nor was it responsibler, the condition of the building. The learned counsel for the resident concedes that the defendant could not have been held lile for any defect in the permanent structure, but insists that tie is a distinction to be made between what is permanent antfhat is temporary. We believe that this distinction may be welljmded, but the necessary result of such a distinction is that wlfis temporary must be considered as an “ appliance,” and onjvhat is permanent as a “ place.” This seems to be the basis of® decis *521 ion in Butler v. Townsend, 126 N.Y. 105; 36 St. Rep. 508, where it was held that a staging on which calkers stood while at work on a vessel was not a “place,” but an “appliance” by means of which the work was done. Assuming the scaffold to have .been an appliance, the defendant did not construct it, and the only question is, did it, by sending the plaintiff to the floor where it was laid, adopt it as its own? The learned trial court'charged the jury that, if it was necessary to furnish the plaintiff a scaffold, it was not necessary that the defendant build one; that, if it found a scaffold there, it was at liberty to use it, but it was bound to ascertain whether it was safe. We think there was nothing in the evidence which would justify a finding that it was necessary for the defendant to construct a scaffold on this floor. The danger, of course, was that of falling through the open spaces between the beams. 'The defendant had furnished planlcs to place across such spaces, and they were used when work was being done at the elevator shafts. The evidence is very meager as to how the defendant’s work at this building was being carried on- There was-nothing to show that it had at any time before placed scaffolds over the floors to enable its workmen to cross them to the elevator shafts, or that such was the ordinary custom in the prosecution of similar work. Nor was the condition of the work such as, in the absence of proof as to custom, to authorize the inference that it should have erected scaffolds. The tile men were at work, turning the arches between the beams. As testified to by the-plaintiff’s witness Cantilon, the only thing that could have been done was to lay the planks across the floor spaces, for the defendant was not at liberty to interrupt the work of the tile men. Planks had been provided by the defendant. True, there were none on the seventh story; but, if they should have been taken to that story, it is not suggested that there were any other workmen than plaintiff and Cantilon to carry them there. In this respect the case is much weaker than that of Cregan v. Marston, 126 N. Y. 568 ; 38 St. Rep. 428, where it was held that the master was not liable for the negligent use by his engineer of an unsound rope, he having furnished a supply of good ropes, though the ropes at the time were locked up in a storehouse. But, if a platform was to be laid across the building, it also does not appear that it would have been the duty of any one but the plaintiff and Cantilon to have laid it. While the planks were being laid, the spaces between the beams would remain open, and the danger of injury would certainly be as great while laying the planks as while traversing the floor without the planks. Conceding, however, the duty of the defendant in this respect, its duty was discharged when it furnished the planks. The failure to use them, or the improper use of them, whether by Williams or Cantilon was the negligence of a fellow servant in the detail of the work, for which the master is not liable. Cullen v. Norton, 126 N. Y. 1 ; 36 St. Rep. 359. The plaintiff knew that the scaffold was not the scaffold of his master, or provided by him, by built and in use by persons carrying on a different part of the work. He made *522 inquiries of the workmen whether tire scaffold was safe, and was told that it was. He was not guilty of negligence in using it under the circumstances, but still, in working on this building, which he knew—in the main, and with the exception of a small detail—was not constructed by his master, he took the risk of danger from such construction. These were the risks of his employment. If there was any negligence in this case, it was either that of Williams in sending plaintiff to seventh story while it was in such an unfinished condition, or that of Cantilon in failing to discover the defect in the platform. As the defendant neither built nor maintained the scaffold, the failure of Cantilon to discover its defects was imputable to it. The only evidence as to the authority and powers of Williams is that he was superintendent of defendant’s work at the building. The determination of when the measurements should be taken in the upper floors, and how far the construction of the building should have progressed before the attempt to take the measurements should be made, was intrusted to him ; but under the case Of Cullen v. Norton, supra, his acts in those respects were a part performance of the work itself, and in such acts he did not represent the master, and the acts were those of a fellow servant.
The judgment and order denying motion for new trial appealed from, should be reversed, and a new trial ordered; costs to abide event.
All concur. ■'