(8 App. Div. 433).

### WITTENBERG v. FRIEDERICHS et al.

(Supreme Court, Appellate Division, Fourth Department. July 30, 1896.)

MASTER AND SERVANT—INJURY TO SERVANT—NEGLIGENCE OF SUBCONTRACTOR.
　　A building contractor is not liable for injury to one of his employés caused by the negligence of a subcontractor, where the contractor had no control over the subcontractor.

Appeal from trial term, Monroe county.

Action by Henry Wittenberg against John J. L. Friederichs & Sons and Frederick C. Seitz, for personal injuries. From a judgment dismissing the complaint as to defendants Friederichs, plaintiff appeals. Affirmed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

John Desmond, for appellant.

Joseph W. Taylor, for respondents.

ADAMS, J. The respondents are co-partners carrying on the business of contractors and builders under the firm name of A. Friederichs & Sons. Upon the 4th day of August, 1894, they entered into a contract with the people of the state of New York for the erection of certain buildings, and, among others, an annex to the Rochester State Hospital, which was to be constructed in accordance with plans and specifications furnished to them. Immediately upon the execution of this agreement, a subcontract was made between the respondents and their co-defendant Frederick C. Seitz, by which the latter undertook to do all the carpenter work upon the buildings. Seitz worked directly from the plans and specifications, and the respondents had no control over him, either in the selection of the material used, or in the performance of the work. The east end of the upper story of the annex building was designed for a dining room, and its dimensions were 62x42 feet. The roof over this dining room was to be supported by four wooden trusses, the tie beams or bottom chords of which were to be formed of 10x12-inch yellow-pine timbers. At the time of the accident hereinafter mentioned, the annex building was nearing completion. The outside walls were laid to the level of the bottoms of the joists and the tie beams of the trusses; the tie beams running north and south, and the joists east and west. The east ends of those of the east span (resting upon, but in no manner fastened to, the east wall) were in place, and the attic floor had been laid. Each tie beam was supported by a post standing in the center, and consisting of three hemlock scantlings, each of which was 2x5 inches, and the three spiked together, thus forming a post 5x6 inches in size. Before the tie beams were put in place, they had been framed, and the holes bored through them to receive the iron truss rods. The masons were about to begin bricking in between the joists, and putting on the cornice of the wall. Two men were at work bricking in between the joists of the north wall of the north side of the annex building, which was the division wall between that building and the kitchen building. There were a few piles of bricks upon the attic floor,—mostly along the south wall,—and there was nothing resting upon the tie beams except the joists and floor. The appellant was in the employ of the respondents, and upon the 15th day of September, 1894, was directed by them to carry bricks up to the attic floor, and deposit them near the wall, to be used by the masons in finishing the same. While engaged in the performance

of this duty, the attic floor, suddenly and without warning of any kind, gave way and fell; and the plaintiff fell with it, and received serious personal injuries. After the accident it was discovered that the beam which was nearest to the east wall had broken about 14 feet from the north wall. The break in this timber covered a space of about 2 feet, and at the point of breakage there were several large knots. It was also found that a hole about $1\frac{1}{4}$ inches in size had been bored through it, and on the underside there was a mortise about 6 inches in diameter, and about $1\frac{1}{2}$ inches deep, for the purpose of giving place to the washer and nut for the bolt which was to pass through it when completed. When the floor fell the east wall of the building was shoved outward, and a considerable portion of this wall also fell. The action was brought to trial at the Monroe trial term, in January, 1896, and at the close of all the evidence a motion was made in behalf of all the defendants to nonsuit the plaintiff. The motion was granted as to the defendants Friederichs, and denied as to the defendant Seitz, and as against the last-named defendant the jury subsequently rendered a verdict in favor of the plaintiff for $4,000.

We are persuaded that, in so far as these respondents are concerned, no error was committed by the learned trial court in the disposition which was made of the case at the trial term. It will be seen, by a careful reading of the complaint in this action, that that pleading was framed upon the theory that the accident was attributable solely to the defective, unsafe, and dangerous condition of the floor of this building; and no allegation will be found therein which, either directly or by implication, charges the respondents with any negligence in the construction of the brick walls of the annex building. It is also quite apparent that the plaintiff, in bringing this action, assumed that the respondents, by reason of the fact that they were the contractors for the construction of the building, could in some way be made liable for whatever negligence or unskillfulness he might be able to establish in the construction of the floor, the giving way of which caused the injury complained of.

Subsequently the plaintiff was required to furnish a bill of particulars, in which it was, for the first time, claimed that the walls of this building, which supported the floor, were defectively constructed, in that they did not contain a sufficient number of binding courses of bricks, as a part thereof; and upon the trial some evidence was given in support of this contention, and two witnesses were called who testified that after the accident they examined the walls of the building, and found places where 14 courses of bricks were laid without a header or binder, which, it was claimed, was an improper method of construction. The difficulty with this claim upon the part of the plaintiff is that that portion of the wall which it is said was thus defectively constructed was in no way affected by the accident, whereas that portion of the wall which did fall out was, according to the testimony of all the witnesses in the case, properly laid. And it was further made to appear, by

satisfactory evidence, that the falling of the east wall was not a proximate cause, but, rather, one of the results, of the accident. In other words, the falling of the wall did not cause the beam to break, but the breaking of the beam did cause the falling of the wall. It is very clear, therefore, that, if the plaintiff's injuries were the result of negligence upon the part of any one, it was the negligence of the subcontractor, Seitz, and not that of the respondents; and it follows that the respondents are under no liability to the plaintiff for the injuries sustained by him, unless in some way they can be made responsible for the failure of their co-defendant, Seitz, to properly perform his part of the contract. We are unable, however, to discover any principle upon which it may be held that any responsibility attaches to these respondents by reason of the negligence of a third party, over whose acts they had no control. It is true that, as between these respondents and the appellant, the relation of master and servant existed, and that by reason of this relation the former were required to exercise a proper degree of care in order to furnish the latter a reasonably safe place in which to perform the duties demanded of him. But this requirement extended only to such places as the master has control over, and where a master sends his servant to work upon premises or property controlled by another, without notice of any defect in construction, the rule just adverted to has no application; for it cannot be said, in such circumstances, that the place was in any manner provided by the master. And in the case at bar we have seen that, so far as the carpenter work of this building was concerned, it was being performed, under a separate and distinct contract, by a third party, over whose actions the respondents had no control, and for whose conduct and workmanship they are in no sense responsible. Moreover, it appears that this subcontractor was a man of skill and experience, and the respondents were justified in assuming that he would perform his part of the contract in a satisfactory and proper manner. It seems that he laid, or caused to be laid, the floor of this attic, and for the time being the same was used by the plaintiff, and probably other employés of the respondents, as a means or appliance for the performance of the duties required of them. In other words, in carrying bricks to be used by the masons in finishing up the walls of the building, they walked over this floor precisely as they would have walked over a platform or staging constructed for that particular purpose. And it is now well settled that, where such a contrivance or appliance has been constructed by a skillful and experienced builder, the master is not liable to his servant for injury resulting from negligence in its construction, and is at liberty to accept the same without inspection. Devlin v. Smith, 89 N. Y. 470; Butler v. Townsend, 126 N. Y. 105, 26 N. E. 1017. We think these authorities are, in principle, decisive of this case; and it matters not whether the attic floor in question is to be regarded as an "appliance" or a "place," for in either case the respondents—not having constructed it, and having no control over it—cannot be charged with responsibility for its defective construction. Whal-

lon v. Elevator Co., 1 App. Div. 264, 37 N. Y. Supp. 174. We conclude, therefore, that the judgment appealed from should be affirmed.

Judgment appealed from affirmed, with costs. All concur.