In *Duncomb* v. *N. Y., H. & N. R. R. Co.* (84 N. Y. 190) those cases are referred to and approved.

In *Chapman* v. *Comstock* (58 Hun, 325 ; S. C. affd., 134 N. Y. 509) I again had occasion to refer incidentally to the same doctrine and to cite some additional cases.

I think the conclusion reached by ADAMS, J., in his opinion is correct, and I, therefore, vote to affirm the judgment.

Judgment affirmed, with costs.

---

HENRY WITTENBERG, Appellant, *v.* JOHN J. L. FRIEDERICH, WILLIAM M. FRIEDERICH, ADAM G. FRIEDERICH and LOUIS FRIEDERICH, Respondents, Impleaded with FREDERICK C. SEITZ.

*Negligence — fall of an attic floor laid by a sub-contractor — when the principal contractor is not liable for an injury to his employee using such floor.*

In an action brought to recover damages resulting from injuries caused by the alleged negligence of the defendants, it appeared that the defendants, named Friederich, who were co-partners, carrying on the business of contractors and builders, contracted to erect an annex to the Rochester State Hospital, and sub-

let the carpenter work to their co-defendant, Frederick C. Seitz, who worked directly from the plans and specifications, and was in no manner under the control of the contractors, either in the selection of material or in the performance of the work.

The plaintiff, who was in the employment of the contractors Friederich in carrying brick up to the attic floor of the building, in the course of its construction, and depositing it near the wall for the use of masons, while so doing was injured by the sudden falling of the attic floor, caused by the breaking of a defective tie beam, which had been put in position by Seitz, the sub-contractor.

*Held,* that the plaintiff was entitled to recover, but only against Seitz, the sub-contractor, who put the tie beam in position, and not against the contractors, Friederich;

That the attic floor, laid by the sub-contractor Seitz, answered the purpose of a platform or staging, to be used by the masons in finishing up the walls of the building, and that the contractors Friederich were not responsible for its condition, they having a right, as the sub-contractor was a man of skill and experience, to assume that he would perform his part of the contract in a proper manner, and to accept the same without inspection;

That whether the attic floor in question was to be regarded as an "appliance" or a "place," the contractors Friederich not having constructed it and having no control over it, could not be charged with responsibility for its defective construction.

APPEAL by the plaintiff, Henry Wittenberg, from a judgment of the Supreme Court in favor of the defendants John J. L. Friederich and others, entered in the office of the clerk of the county of Monroe on the 25th day of January, 1896, upon the dismissal of his complaint as against the respondents, rendered after a trial at a Trial Term of the Supreme Court, had in and for the county of Monroe, on the 17th day of January, 1896.

The court directed a nonsuit at the close of the evidence as to the defendants John J. L. Friederich and others.

*John Desmond,* for the appellant.

*Joseph W. Taylor,* for the respondents.

ADAMS, J.:

The respondents are co-partners carrying on the business of contractors and builders under the firm name of " A. Friederich & Sons."

Upon the 4th day of August, 1894, they entered into a contract with the people of the State of New York for the erection of certain buildings, and, among others, an annex to the Rochester State

Hospital, which was to be constructed in accordance with plans and specifications furnished to them.

Immediately upon the execution of this agreement a sub-contract was made between the respondents and their co-defendant, Frederick C. Seitz, by which the latter undertook to do all the carpenter work upon the buildings.

Seitz worked directly from the plans and specifications, and the respondents had no control over him, either·in the selection of the material used or in the performance of the work.

The east end of the upper story of the annex building was designed for a dining room, and its dimensions were sixty-two by forty-two feet. The roof over this dining room was to be supported by four wooden trusses, the tie beams or bottom chords of which were to be formed of ten by twelve-inch yellow pine timbers.

At the time of the accident hereinafter mentioned the annex building was nearing completion. The outside walls were laid to the level of the bottoms of the joists and tie beams of the trusses. The tie beams running north and south and the joists east and west; the east ends of those of the east span, resting upon, but in no manner fastened to, the east wall, were in place, and the attic floor had been laid. Each tie beam was supported by a post standing in the center and consisting of three hemlock scantlings, each of which was two by five inches, and the three spiked together, thus forming a post five by six inches in size. Before the tie beams were put in place they had been framed and the holes bored through them to receive the iron truss rods.

The masons were about to begin bricking in between the joists and putting on the cornice of the wall. Two men were at work bricking in between the joists of the north wall of the north side of the annex building, which was the division wall between that building and the kitchen building. There were a few piles of brick upon the attic floor, mostly along the south wall, and there was nothing resting upon the tie beam except the joists and floor.

The appellant was in the employ of the respondents, and upon the 15th day of September, 1894, was directed by them to carry brick up to the attic floor and deposit them near the wall, to be used by the masons in finishing the same. While engaged in the performance of this duty the attic floor suddenly, and without

warning of any kind, gave way and fell, and the plaintiff fell with it, and received serious personal injuries.

After the accident it was discovered that the beam which was nearest to the east wall, had broken, about fourteen feet from the north wall. The break in this timber covered a space of about two feet, and at the point of breakage there were several large knots. It was also found that a hole about one and a quarter inches in size had been bored through it, and on the under side there was a mortise about six inches in diameter and about one and one-half inches deep, for the purpose of giving place to the washer and nut for the bolt which was to pass through it when completed.

When the floor fell, the east wall of the building was shoved outward, and a considerable portion of this wall also fell.

The action was brought to trial at the Monroe Trial Term in January, 1896, and at the close of the evidence a motion was made in behalf of all of the defendants to nonsuit the plaintiff. The motion was granted as to the defendants Friederich, and denied as to the defendant Seitz, and as against the last-named defendant the jury subsequently rendered a verdict in favor of the plaintiff for $4,000.

We are persuaded that, in so far as these respondents are concerned, no error was committed by the learned trial court in the disposition which was made of the case at the Trial Term. It will be seen by a careful reading of the complaint in this action that that pleading was framed upon the theory that the accident was attributable solely to the defective, unsafe and dangerous condition of the floor of this building; and no allegation will be found therein which, either directly or by implication, charges the respondents with any negligence in the construction of the brick walls of the annex building. It is also quite apparent that the plaintiff, in bringing his action, assumed that the respondents, by reason of the fact that they were the contractors for the construction of the building, could in some way be made liable for whatever negligence or unskillfulness he might be able to establish in the construction of the floor, the giving way of which caused the injury complained of.

Subsequently the plaintiff was required to furnish a bill of particulars, in which it was for the first time claimed that the walls of this building which supported the floor were defectively constructed,

in that they did not contain a sufficient number of binding courses of brick, as a part thereof; and upon the trial some evidence was given in support of this contention, two witnesses being called who testified that after the accident they examined the walls of the building, and found places where fourteen courses of brick were laid without a header or binder, which it was claimed was an improper method of construction.

The difficulty with this claim upon the part of the plaintiff is, that that portion of the wall, which it is said was thus defectively constructed, was in no way affected by the accident; whereas that portion of the wall which did fall out was, according to the testimony of all the witnesses in the case, properly laid. And it was further made to appear by satisfactory evidence, that the falling of the east wall was not a proximate cause, but rather one of the results of the accident. In other words, the falling of the wall did not cause the beam to break, but the breaking of the beam did cause the falling of the wall. It is very clear, therefore, that if the plaintiff's injuries were the result of negligence upon the part of any one, it was the negligence of the sub-contractor, Seitz, and not of the respondents; and it follows that the respondents are under no liability to the plaintiff for the injuries sustained by him, unless in some way they can be made responsible for the failure of their co-defendant, Seitz, to properly perform his part of the contract.

We are unable, however, to discover any principle upon which it may be held that any responsibility attaches to these respondents by reason of the negligence of a third party, over whose acts they had no control. It is true that, as between these respondents and the appellant, the relation of master and servant existed; and that, by reason of this relation, the former were required to exercise a proper degree of care in order to furnish the latter a reasonably safe place in which to perform the duties demanded of him; but this requirement extended only to such places as the master had control over; and where a master sends his servant to work upon premises or property controlled by another, without notice of any defective construction, the rule just adverted to has no application, for it cannot be said in such circumstances that the place was in any manner provided by the master. And in the case at bar we have seen that, so far as the carpenter work of this building was concerned, it was

being performed under a separate and distinct contract, by a third party, over whose actions the respondents had no control, and for whose conduct and workmanship they were in no sense responsible.

Moreover, it appears that this sub-contractor was a man of skill and experience, and the respondents were justified in assuming that he would perform his part of the contract in a satisfactory and proper manner. It seems that he laid, or caused to be laid, the floor of this attic; and for the time being the same was used by the plaintiff and probably other employees of the respondents as a means or appliance for the performance of the duties required of them. In other words, in carrying brick to be used by the masons in finishing up the walls of the building, they walked over this floor precisely as they would have walked over a platform or staging constructed for that particular purpose. And it is now well settled that where such a contrivance or appliance has been constructed by a skillful and experienced builder, the master is not liable to his servant for injury resulting from negligence in its construction, and is at liberty to accept the same without inspection. (*Devlin* v. *Smith,* 89 N. Y. 470; *Butler* v. *Townsend,* 126 id. 105.) We think these authorities are in principle decisive of this case, and it matters not whether the attic floor in question is to be regarded as an "appliance" or a "place," for in either case, the respondents, not having constructed it and having no control over it, cannot be charged with responsibility for its defective construction. (*Whallon* v. *Sprague El. Elevator Co.,* 1 App. Div. 264.)

We conclude, therefore, that the judgment appealed from should be affirmed.

All concurred.

Judgment affirmed, with costs.