## JOHN ANDERSON, Respondent, v. THE FORRESTER-NACE BOX COMPANY, Appellant.

### Kansas City Court of Appeals, December 7, 1903.

1. **MASTER AND SERVANT: Negligence: Evidence Considered.** A carpenter injured by the flying of a nail while working in a basement, complained of the darkness and of the character of the nail. The evidence is reviewed and held insufficient to show defendant guilty of any negligence, and that the plaintiff was guilty of whatever negligence occurred.

2. ——: ——: **Appliances: Master's Duty.** An employer is not bound to have the safest appliances that can be obtained.

3. ——: ——: **Measure of Care: Probable Damages.** The ordinarily prudent man will order his precaution by the measure of what appears likely in the usual course of things; and it is not negligence not to take precaution against injuries not reasonably anticipated, and which would not have happened except under exceptional circumstances.

Appeal from Jackson Circuit Court.—*Hon. W. B. Teasdale,* Judge.

REVERSED.

*Harkless, O'Grady & Crysler* for appellant.

We cite the following authorities upon the issues in this cause:  Lee v. Gas Co., No. 5594, K. C. Court of Appeals, Jan. term, 1902, (not yet reported) ; Watson v.

Coal Company, 52 Mo. App. 366; Shea v. Railroad, 76 Mo. App. 29.

*John G. Park* for respondent.

(1)    It is the duty of the master to exercise ordinary care to provide the servant a reasonably safe place in which to work, and reasonably safe appliances with which to work.    Welden v. Railroad, 67 S. W. 698, 93 Mo. App. 668; Prophet v. Kemper, 68 S. W. 956, 95 Mo. App. 219; Nash v. Dowling, 93 Mo. App. 156; Pauck v. Beef Co., 159 Mo. 467.  (2)    The basement being dark and gloomy and not properly lighted, it became a question for the jury whether it was a reasonably safe place for plaintiff to work in, and whether defendant in sending plaintiff there was in the exercise of ordinary care. Adams v. McCormick Mach. Co., 68 S. W. 1053,1056, 95 Mo. App. 111; Wendler v. House Fur. Co., 165 Mo. 527; Hester v. Dold Pkg. Co., 95 Mo. App. 16.   (3)   In furnishing the nails ordinarily used in the machine and covered with a substance calculated to make the hatchet glance and prevent a direct and safe blow, defendant did not furnish reasonably safe appliances.   It was a question for the jury whether such nails were reasonably safe.   Nash v. Dowling, 93 Mo. App. 156; Edwards v. Asphalt Co., 92 Mo. App. 221.   (4)   Plaintiff did not as a matter of law, assume the risk of injury from the use of these cement covered nails in defendant's dark basement.    Adams v. McCormick Mach. Co., 68 S. W. 1053, 95 Mo. App. 111; Welden v. Railroad, supra; Nash v. Dowling, supra; Huhn v. Railroad, 92 Mo. 447.

ELLISON, J.—This is an action for injury to one of plaintiff's eyes.  He prevailed in the trial court.

The cause of complaint as charged in the petition is that plaintiff was in the employ of defendant as a carpenter in and around its box factory and at the time of the accident was laying plank flooring in the basement of

defendant's building, and in attempting to drive a nail into a stake which he had set by the side of a stringer, it glanced or sprung from its place and struck and broke his eye-glass so that the broken fragments entered the eye itself, inflicting a painful injury. The negligence charged was that the basement was so dark that he could not see clearly the hatchet and nail so as to accurately aim his strokes. And that the nails (which were furnished by defendant) were a new kind covered with cement and were slender and springy, so that they had a tendency to spring from their place while being driven. That the cement was liable to cover the face of his hatchet and render it liable to glance from the head of the nail. It is further charged that defendant knew, or might have known, of the darkness of the basement in time to have provided lights.

The evidence as given by plaintiff in his own behalf shows that he has no cause of action. He was a carpenter of many years' experience. He had been working 'for defendant several months prior to the injury and for some time afterwards. The charge that the place where he was at work was too dark and known to be by defendant in time to have provided light is eliminated from the case in two vital particulars by his testimony. He stated that the windows did not give good light in the basement, that it was only about half light there, and that he could barely see the face of the hatchet and the nail. But he said that he held the nail while he struck the first blow to set it, and that it was at the second blow that it flew out and injured him and that at that stroke he "struck a square blow." From this it is apparent that the question of light had no connection with the accident, since the stroke he made was a proper one, and one that the darkness did not affect and that light could not have bettered. Again, on the question of the place being too dark, he testified that lanterns had been provided and that he had used them at other times when it was dark. He then stated in response to a question by

his attorney that he could not have used a lantern to any advantage in laying the floor and that he "intended to go ahead as best he could without a lantern, and that he was afraid to use it—may be upset." He then stated on re-cross examination as follows:

"Q. What would have been the matter with your setting the lantern down somewhere? A. Well, I had to move the lantern every ten or fifteen minutes, you see, to give me light to the place where I was working. Q. Well, then, you just concluded to take the risk of it; you wouldn't get a lantern? A. I would not get a lantern because I like to get along without."

It is thus apparent that even if the darkness had been the cause of a misstroke at the nail, it was the result of his own negligence in not doing as he had at other times in the same place: "used a lantern in dark places."

The only other charge of negligence is that the nail was an unsafe instrument furnished by defendant. We regard it as without merit. It does not appear that any different nail was demanded, or that any complaint was made of this particular kind. Plaintiff stated that he was not under the immediate supervision of any one. He had simply been directed to lay the floor. That the nail was a steel wire nail (as distinguished from a cut iron nail) covered with cement and was considered an improved nail; that he had used them many times before the accident in working around the factory—had driven "about a thousand" of them. That he worked there, after being off five days on account of the accident, for a month and used the same nails at various places where he had need of them. That he had been at work on this floor with the same nails for about fifteen days before he was hurt; that he was in sole charge of the work. That there was a car load of these nails in the basement and that those he used he got himself from the general lot and that he used his own hatchet. It is true he stated

the nails were a "little slimmer and are to be used only in the machine." But he candidly stated that he had used these nails for any purpose needed, and in any place, both before and after the accident.

The evidence not only showed the nail was an improved nail but that it had much to recommend it over other nails; and though it be conceded that it was more inclined to fly out while being driven than others, that fact by no means fixes a liability on defendant, when considered with the evidence that plaintiff was fully cognizant of all its qualities and its uses. This court, in an opinion by Judge HALL (Muirhead v. Railroad, 19 Mo. App. 634) said that an employer is not bound to have the safest appliances which can be obtained. And that is the rule recognized and applied by the supreme court. Huhn v. Railroad, 92 Mo. 440.

But aside from the view just expressed, we do not consider the nails used by defendant to have been shown to be a defective appliance in the sense meant by the law. They were said to be somewhat more difficult to start into the wood than others. But it can not be that such trifling difference, considering the nature of so common an appliance as a nail, could render the employer liable to an action in a case where he would not have been if some other nail had been used. The misstroke on a nail, the failure of a nail to take proper hold and glance out of its place when being driven, is too common an occurrence in the life of a carpenter to make a mishap arising therefrom the cause of an employer's liability. A large nail is harder to drive than a small one; and either is harder to drive in and is more apt to glance out of seasoned hard wood than soft wood. Is it to be expected that the employer is to stand in constant attendance on a carpenter to tell him these things?

This case is not like that where a sliver may fly off from a defective sledge or other appliance. It is an ordinary glancing of a nail which happens to every carpenter, perhaps every day in the year. The incident is

so common and an accident therefrom so rare, that it is not just to assert a claim when it unexpectedly happens.

"A reasonable man does not consult his imagination but can be guided only by a reasonable estimate of probabilities. The reasonable man, then, to whose ideal behavior we are to look as the standard of duty, will neither neglect what his reason and experience will enable him to forecast as probable, nor conduct on a basis of bare chances, a business whose success is dependent upon his accuracy in forecasting the future. He will order his precaution by the measure of what appears likely in the usual course of things." Ray's Negligence of Imposed Duties, 133. Webb's Pollock on Torts, 45, says that, "a reasonable man can be guided only by a reasonable estimate of probabilities. If men went about to guard themselves against every risk to themselves or others which might by ingenious conjecture be conceived as possible, human affairs could not be carried on at all." Hysell v. Swift & Co., 78 Mo. App. l. c. 50.

"When an injury can not reasonably be anticipated and would not have happened except under exceptionable circumstances, it is not negligence to fail to take precautionary measures to prevent it, although if taken the injury would not have resulted." Am. Brew. Co. v. Talbot, 141 Mo. 674. The view which we have taken of this case finds general support in the cases of Lee v. Gas Co., 91 Mo. App. 612; Watson v. Coal Co., 52 Mo. App. 366 and Shea v. Railroad, 76 Mo. App. 29.

In view of the record, as made up from the testimony of plaintiff himself, we have no hesitation in holding that he has no cause to complain of the defendant, and the judgment will accordingly be reversed. All concur.