LOEHRING, Appellant, v. WESTLAKE CONSTRUCTION COMPANY and ROEBLING CONSTRUCTION COMPANY, Respondents.

**St. Louis Court of Appeals, April 10, 1906.**

1. **NEGLIGENCE: Constituent Elements.** In every case involving actionable negligence there are three necessary constituent elements: First, the existence of a duty on the part of the person complained of to protect the complainant; second, the failure to perform the duty; and third, the injury to the complainant as a result of the failure.

2. ————: **Master and Servant: Original Contractor and Employee of Subcontractor: Safe Place to Work.** The relation of master and servant does not exist between an original contractor and an employee of his subcontractor so that such original contractor is under no obligation to use care in furnishing such employee a safe place to work.

3. ————: ————: ————: **Safe Premises.** But it is the duty of an original contractor, having charge of the construction of an entire building, to exercise ordinary care in keeping the premises in a reasonably safe condition so as to avoid injuring those who are rightfully there and engaged in work upon the building, though not employed by him, and a failure to exercise such care is negligence which would render the original contractor liable to one injured by reason of such negligence.

4. ————: ————: ————: ————. Where an original contractor, engaged in the erection of a building, for the purpose of securing out-riggers which supported a scaffold on the outside of the building, used broad planks passing under the joists on the inside of the building, upon which planks the workman about the building were accustomed, with the knowledge of the original contractor, to walk in passing about the building, it was negli-

gence on the part of the original contractor to leave such planks unbraced and rendered him liable in damages to the employee of a subcontractor, who fell and was injured, while using one of such planks, on account of its being insecure.

5. **MASTER AND SERVANT: Safe Place to Work: Limit of Duty.** The rule that a master must use ordinary care in furnishing his servant a reasonable safe place to work does not require of him any duty to protect his servant against injuries that cannot be reasonably anticipated and guarded against by the exercise of ordinary care, or to use care to make safe those parts of the premises where the servant cannot reasonably be expected to go in the performance of his duty.

6. ———: ———: ———. An employee of a subcontractor was engaged at work on the sixth story of a building when it became necessary in the prosecution of his work to descend to the fifth floor where he was injured by reason of an unsafe support upon which he was walking. It could not have been anticipated that he would have to go to the fifth floor in the prosecution of the work in which he was engaged. *Held,* the employer was under no obligation to use care in making the place safe where the employee was hurt.

7. ———: ———: ———. Where it was shown that the subcontractor for whom the injured employee was working had no power or control over the support which gave way when the employee walked upon it, the same being under the control of the original contractor, the subcontractor owed the employee no duty to render the same secure.

8. **NEGLIGENCE: Scaffolding.** Section 6447, Revised Statutes 1899, providing for safe scaffolds in erecting and taking down buildings so as to prevent injury to persons working thereon or passing under the same, does not apply to appliances used inside a building for the purpose of supporting scaffolds on the outside.

Appeal from St. Louis City Circuit Court.—*Hon. Warwick Hough,* Judge.

REVERSED AND REMANDED AS TO ONE DEFENDANT AND AFFIRMED AS TO THE OTHER.

*Albert L. Schmidt* and *D. D. Holmes* for appellant.

(1)    The court erred in instructing the jury in behalf of the defendant, Westlake Construction Com-

pany, at the close of plaintiff's case, that under the pleadings and the evidence the plaintiff could not recover. (a) Plaintiff was on the premises as an employee of the subcontractor, and was engaged in doing work in which the defendant, Westlake Construction Company had an interest, and which work the interest of said company made it necessary to be done, and said defendant owed plaintiff a duty arising out of the service which he was performing. The necessity of that service to the said defendant, and the fact of the performance of that service required plaintiff to be where he was. Gerrity v. Bark Kate Cann, 2 Fed. Rep. 246; Wittenberg v. Seitz, 40 N. Y. Supp. 900; Johnson v. Ott, 25 Alt. 751; Bright v. Barnett & Record Co., 88 Wis. 299; Cleveland, C. C. & St. L. R. Co. v. Berry, 46 L. R. A. 38; Dale v. Hill-O'Meara Construction Co., 82 S. W. 1092. (b) There were allegations and proof of a general custom to securely fasten planks placed as the plank in question was placed, and also of a general custom for workmen to use such planks as a place to walk upon, and that said defendant negligently left said plank unfastened, thereby causing plaintiff's injury. This made a question for the jury. Gillespie v. Cummings, 62 N. J. L. 373; Jarvis v. Railroad, 16 N. Y. Supp. 97, 133 N. Y. 623; Rich v. Pelham Hod Elevating Co., 23 N. Y. App. Div. 246; Brown v. Leclere, 22 Canada Supp. 53, 1 Quebec 234; Rich v. Saginaw Bay Towing Co., 132 Mich. 237. (c) The leaving of said plank loose and unfastened in such a manner as to cause plaintiff's injury was a violation of section 6447, Revised Statutes 1899, for which defendant is liable to the plaintiff. 1 Thompson on Negligence, p. 12, secs. 10, 11; 1 Shearman & Redfield on Negligence, sec. 13; Colliott v. Am. Mfg. Co., 71 Mo. App. 171; Brannock v. Elmore, 114 Mo. 59, 21 S. W. 451; Hanlon v. Railroad, 104 Mo. 381, 16 S. W. 233; Dahlstrom v. Railroad, 108 Mo. 525, 18 S. W. 919. (2) The court erred in instructing the jury in behalf of the defendant, Roebling Construction Company, at the close

of plaintiff's case, that under the pleadings and the evidence the plaintiff was not entitled to recover, for the following reasons: (a) Section 6447, Revised Statutes 1899, made it the duty of this defendant to see that the plank in question was securely fastened, and said defendant's failure to discharge its said duty by allowing said plank to remain loose and unfastened was a violation of this statute for which it was liable to plaintiff. Sec. 6447, R. S. 1899, and authorities cited under Point 1 (c). (b) Independent of the statute the law imposes upon this defendant the duty of furnishing the plaintiff a safe place to work. Defendant violated this duty by allowing said plank to remain loose and unfastened, and was liable to the plaintiff for any injury resulting to him by reason thereof. Sullivan v. Railroad, 107 Mo. 78, 17 S. W. 748; Doyle v. Mo., K. & T. Trust Co., 140 Mo. 18, 41 S. W. 255; McBeath v. Raule, 192 Ill. 626; Railroad v. Maroney, 170 Ill. 520; Hess v. Rosenthal, 160 Ill. 621.

*Wise & McNulty* and *Seddon & Holland* for respondent Roebling Construction Company.

The court did not err in sustaining the demurrer to the evidence of the respondent Roebling Construction Company. (a) Because the appellant's petition does not state a cause of action against said respondent. Lucas v. Railroad, 174 Mo. 270, 73 S. W. 589; Stagg v. Ed. Western Tea & Coffee Co., 169 Mo. 489, 69 S. W. 391. (b) Because the testimony failed to show a cause of action against said respondent. O'Brien v. Western Steel, 100 Mo. 182, 13 S. W. 402; Glaser v. Rothschild, 80 S. W. 332.

*McKeighan & Watts* and *Wm. R. Gentry* for respondent Westlake Construction Company.

STATEMENT.—The action is for personal injuries, bottomed on the alleged negligence of defendants by rea-

son of which it is alleged plaintiff fell from, not a scaffold, but an appliance affixed to a scaffold for the purpose of supporting it, and was injured. There are two defendants. The relation of the appellant is not identical with both and therefore different rules for the admeasurement of duty and liability between the parties obtain. The facts are that the plaintiff, a carpenter, was in the employ of the defendant Roebling Construction Company at the time of his injury and in no manner connected with the other defendant, the Westlake Construction Company. The two companies, however, were engaged as contractors in the erection of the Jefferson Hotel building in the city of St. Louis. The defendant Westlake Construction Company was the general contractor on said building and was engaged in doing the brick work on the outside thereof. The defendant Roebling Construction Company was a subcontractor and engaged in preparing for and putting in concrete floors inside of said building. In the prosecution of the brick work, the Westlake Construction Company erected what is known as a swinging or hanging scaffold for the use of its bricklayers. The scaffold was suspended from the ends of certain beams called "out-riggers" which protruded on a level with the fourth floor from within, about six feet outside of the building. Its mode of construction was about as follows: These beams or out-riggers, on the protruding ends of which the scaffold was suspended, were eighteen feet in length, and were placed sixteen feet apart, along on the upper side of the iron or steel cross-beams of the fourth floor of the building. Six feet of the out-rigger protruded outside of the building and twelve feet thereof was inside. On top of the extreme inner end of the out-riggers, a two-inch plank was affixed crosswise, and on top of this plank, immediately over the end of each out-rigger, a four-by-four timber, about eight or ten feet in length, was placed, standing on end perpendicularly, the topmost end of which came within two inches of the iron cross-beams which con-

stituted the framework of the floor above; that is, the framework of the ceiling of the fourth and the floor of the fifth story, and immediately on top of these uprights, a plank two inches in thickness and twelve inches in width was placed crosswise as a plate or cap, immediately beneath and adjacent to the lower surface of the iron crossbeams of said fifth story, so that the pressure upwards from the weight of the swinging scaffold downwards, outside of the building, would tend to tighten the four-by-four upright within the building against this two-by-twelve-inch plate or cap which was in turn tightened or made tolerably fast by means of this pressure against the lower surface of said iron crossbeams, thereby rendering the scaffolding outside secure. It is to be noted that the only purpose of the two-by-twelve-inch plank was as a plate or cap on top of the four-by-four uprights immediately beneath the iron floor beams in the framework of the fifth floor, and to support the scaffold outside. The plaintiff and a companion, in the employ of the company, who had neither built nor controlled the scaffold, were engaged as carpenters on the sixth floor in placing boxes around the iron I beams therein, as casing in which to build concrete around said I beams in putting in concrete floors, and, in the proper discharge of his work, it became necessary for him to go to the story below, the fifth floor, and with a board, press upwards on the box and hold a portion of said box therewith while his companion nailed the same. There had been no scaffold provided on the fifth floor for this work; in fact, there is nothing in the evidence tending to show that it was anticipated by any one that it would be necessary to go into the fifth story in the performance of this work being done on the sixth floor. Having gone to the fifth story, however, for the purpose mentioned, the plaintiff desired to cross from one side to the other. He could have passed across on an iron beam, the surface of which was three inches, but by doing so he would have been compelled to have

swung his body around several of the intermediate iron
or steel uprights in the framework of the building. See-
ing this two-by-twelve-inch plate or cap on top of the
four-by-four uprights mentioned, just beneath the floor-
beams and immediately adjacent to the bottom of the
three-inch iron beam mentioned, and having seen work-
men in other buildings walk on said plank, he chose
rather to walk thereon than on said three-inch iron
beam, as it afforded a wider surface to walk upon. He
stepped down from the upper surface of the beam on
which he then was, to the plank or plate eight inches
below, and walked thereon, stepping over the iron cross-
beams of the fifth floor and passing over two sections in
safety, and stepped over one of the beams onto the third
section, whereupon said plate, under his weight, slight-
ly deflected from its position, and precipitated him to the
floor below, from which fall he sustained injuries on ac-
count of which this suit is now before us. The plate on
which he stepped deflected only and did not fall from
its position, nor did the scaffold outside fall.

From plaintiff's testimony we glean the following
salient facts: He is a man forty years of age, a carpen-
ter of many years' experience, in the employ of the Roeb-
ling Construction Company, the said contractor engag-
en in putting in the concrete floors. The plate from
which he fell was not the property of, nor had it been er-
ected by, nor was it in any manner under the control of
his employer, but was an appliance erected and main-
tained by the other defendant, the Westlake Construction
Company, provided for the purpose of sustaining its
scaffold in use by the bricklayers outside of said build-
ing. The plate from which he fell was not a scaffold,
but, on the contrary, it was only a portion of the sup-
port which was outside of the building. The plain-
tiff testified that he was present and saw the West-
lake Construction Company erect the scaffold a few
days before and knew that it was erected for the
purpose of the bricklayers outside and that this plank

or plate from which he fell, was placed there as a support for said scaffold, and not primarily for the purpose of the workmen to walk or stand upon. He said that it was convenient for the workmen to walk on this plank and that it was customary in other places for men to do so; that he had walked on like contrivances or supports on similar scaffolds in other buildings; that he had not, nor had seen other workmen, walk on the plank in this building theretofore; that said plank "was supposed to be braced" in order to hold it in position, to more effectually support the scaffold outside. An experienced carpenter, a witness for the plaintiff, testified to the custom among carpenters of walking on such plank or plate in similar scaffolds and also that it was customary to brace or make fast such plank or plate with angle braces, so that the plank could not slip out of place. This was done, however, for the purpose of rendering the scaffold more secure. It was shown that there was no angle brace affixed to the plate in this case, and for the want of such angle brace, the plate was deflected under the weight of the plaintiff, causing his injury. It appears from the evidence that the scaffold itself was secure and did not fall when the plate became deflected. The work which plaintiff was prosecuting, was not on the fifth floor from which he fell, but was on the sixth floor. His entry upon the fifth floor, however, to press upward on the box above, was legitimate in the proper discharge of his duties. He had not been directed by his employer to go down to said floor nor had he been directed to walk upon or otherwise use the plate in question, nor warned not to do so. The only order shown in the evidence is that the foreman had given plaintiff general directions upon commencing the work, "to put in the boxes the best and quickest way we could put them in."

At the conclusion of the plaintiff's evidence, the court directed a verdict for the defendants, whereupon plaintiff submitted to an involuntary nonsuit; and upon

the court declining to set the same aside, he appeals here.

NORTONI, J. (after stating the facts).—1. In view of the fact that the relation of the appellant to the two respondents is not identical, it will be both convenient and necessary to treat of the liability of either separately, inasmuch as different principles pertinent to these different and distinct relations obtain, and therefore we will first consider the case with respect to the Westlake Construction Company, the general contractor, who had erected and controlled the scaffold of which the cap or plate causing plaintiff's injury, was parcel. In this connection, it is proper to first lay down the general familiar propositions that in every case, involving actionable negligence, there are of necessity, three constituent elements to its existence: First, the existence of a duty on the part of the person complained against to protect the complaint from the injury of which he complains. Second, the failure of the defendant to perform that duty. Third, injury to the plaintiff resultant from such failure of the defendant. And it is only where these elements are brought together unitedly that actionable negligence is constituted. It is obvious that the absence of an affirmative showing of any one of these essential elements renders the complaint bad or the evidence insufficient. [Shaw v. Goldman, 116 Mo. App. 332, 92 S. W. 165.]

With these principles in mind, we are to examine the facts of the case with respect to the contractor, Westlake Construction Company. Appellant was not in the employ of this respondent, no privity existed between these parties whatever, and the relation of master and servant did not obtain. Nor was it shown that this respondent had either engaged or assumed to furnish appellant with a scaffold or other convenience, and in the absence of the relation of master and servant, or other engagement or assumption, certainly no such duty

will be imposed by the law. Appellant argues, however, that even though no duty is shown to exist otherwise in his favor from the respondent, that it erected its scaffold outside of the building with the contrivance complained of inside, which was customarily used by workmen in' other buildings, and that it thereby created a convenient contrivance for the use of workmen engaged in the prosecution of the same common purpose of erecting the building, whether in the employ of the same master or not; that by so erecting the convenient contrivance for the workmen, with knowledge of the custom of carpenters and others engaged about the building to generally use the plate to walk upon, it thereby became its duty to so construct and brace the same so as to render it safe and secure for such purpose as the custom proved, showed it was likely to be appropriated by those rightfully engaged in the same common work of building, even though the contract relation of master and servant did not obtain. And it is argued that respondent, having constructed it with knowledge of the custom, it amounted to an implied invitation or allurement to appellant to occupy the plate or plank in question for the purpose to which such planks were usually appropriated. In a memorandum, filed by the learned trial judge at the time of denying the motion to set aside the nonsuit, the opinion was expressed that there was no duty resting upon the Westlake Construction Company in favor of this appellant, an employee of the Roebling Company, and from this, it is fair to presume that it was upon this theory the trial court nonsuited appellant on the trial. It is the opinion of this court that the trial judge erred in so holding. It is now well settled in the law of negligence applicable to cases of this nature, that there are duties owing, the violation of which will constitute actionable negligence, in instances other than those arising out of privity of contract, and many such arising out-

side of the relation of master and servant, etc. The principle finds application in that class of cases where the injured party is rightfully on the premises and is injured by the negligence of another under such circumstances as could reasonably have been foreseen, been contemplated, and the probable injury averted by ordinary care on the part of the person whose act caused the injury. From an examination of the adjudicated cases, the general rule deduced therefrom seems to be; whenever circumstances attending the situation are such that an ordinarily prudent person could reasonably apprehend that as the natural and probable consequences of his act, another person, rightfully there, will be in danger of receiving an injury, a duty to exercise ordinary care to prevent such injury arises, and if such care is not exercised by the party on whom the duty rests and injury to another person results therefrom, liability on the part of the negligent party to the person injured will generally exist in the absence of any other controlling element or fact, and this, too, without regard to the legal relationship of the parties. The rule thus stated is abundantly supported both in this country and in England by the most sound and conservative courts, as will appear by consulting the following authorities in point: Pa. Ry. Co. v. Snyder, 55 Ohio St. 342-361; Young v. Waters-Pierce Oil Co., 185 Mo. 634-666-667, 84 S. W. 929; Delvin v. Smith, 89 N. Y. 470-477; Noon v. Ry. Co., 46 Minn. 106-109; Bright v. Barnett & Record Co., 88 Wis. 299-307; Wittenberg v. Seitz, 40 N. Y. Supp. 899-900; Ella v. Boyce, 70 N. W. (Mich.) 1106; also note to Cleveland, etc., Ry. Co. v. Berry, 46 L. R. A. 38-39; Whittaker's Smith on Negligence (2 Am. Ed.), 12-18; Heaven v. Pender, 11 Q. B. D. 503-509. In the case last cited, BRETT, Master of the Rolls, deduced from the cases the following rule: "The proposition which these recognized cases suggest, and which is, therefore, to be deduced from them, is that whenever one person is by circumstances placed in a position with regard to another,

that everyone of ordinary sense who did think would at once recognize that if he did not use ordinary care and skill in his own conduct with regard to those circumstances he would cause danger of injury to the person or property of another, a duty arises to use ordinary care and skill to avoid such injury." And the learned judge denominates this the remote or larger premise, in which is included the lesser or minor proposition of duty and obligation arising from the principle of implied invitation, on which a majority of the court in that case based the judgment. It is true that while the court unanimously agreed to the judgment, COTTON, L. J., and BOWEN, L. J., declined to concur with the M. R. in the broad statement of the proposition supra, and contented themselves with reaching the same result on the narrower ground of implied invitation. But the current of authority, as evidenced by the cases cited supra, supports the more comprehensive doctrine stated in the general rule quoted, which is the principle of the case of Young v. Waters-Pierce Oil Co., 185 Mo. 634, 84 S. W. 929. See also the same principle incorporated in the text in Whittaker's Smith on Negligence (2 Am. Ed.), 13-14, where the opinion of BRETT, M. R., is copied in full with comments of approval in the text by the author. Having thus ascertained that under the circumstances contemplated in the general rule stated, a duty was imposed upon the Westlake Company to exercise ordinary care toward others engaged on the building, even though they were not in its employ, let us examine the case before the court and ascertain whether or not the facts bring it within the purview of that doctrine. The appellant stepped on a board or plank twelve inches wide and two inches thick, laid on the topmost end of four-by-four-inch supports, standing perpendicular, the bottoms of which rested upon "out-riggers" projecting from the building. This plate on top of the four-by-four-inch uprights, was wedged between the top of the uprights and the under surface of the floor girders of the fifth floor,

was adjacent to the partition framework of said fifth floor and furnished a convenient place for workmen to step upon when moving about in proximity thereto. He had gone to the fifth story in the performance of a task and had occasion to pass from one part of that story to another. The floor was not laid and he had the choice of walking on an iron beam three inches wide, five stories above the ground, or on a board twelve inches wide. He chose the latter. It slipped from its position and he was injured. Appellant testified regarding that board, as follows:

"Now that [the board] was supposed to be perfectly solid and tight and not to be moved. Q. I will ask you what was the custom with reference to using those twelve-inch planks for the purpose of walking on them? A. They were used by anybody, by any man to get around there. He would have to use them. Q. What was the custom with reference to fastening them? Were they supposed to be fastened or remain loose? A. No, sir; they were supposed to be perfectly fastened because if they were loose it might give way here and come out and slip the scaffold out. Q. Have you ever used any of them to walk on before? A. I had on previous occasions at other buildings."

Another witness for plaintiff testified that such planks or platforms were supposed to be properly secured because it was customary for people to walk on them; that in steel buildings, when there was no flooring in, it was almost impossible to walk on the girders. Said witness was then asked this question:

"Q. What was the custom with reference to using that plank to walk on? A. To walk on, of course, any carpenter will walk on it; there is nothing else to walk on; he would have to walk on it if he was sent out there to do a piece of work."

From these excerpts it appears that there was positive testimony in the record that such platforms were constantly used by workmen engaged in constructing

a building with iron or steel framework, and further, that it was the custom to secure such boards in place by bracing them because they were used by workmen to walk upon.

It appears from this evidence that the showing was sufficient for the jury to answer whether or not, under those circumstances, the Westlake Company, which had constructed and controlled the scaffold, was guilty of negligence under the rule stated, for which it was answerable. While it is true appellant was not a servant of this respondent but was an employee of the Roebling Construction Company, a subcontractor under it, yet the Westlake Company owed a duty to the other work-. men on the building to not unnecessarily imperil them, whether in its employ or not, inasmuch as they were all engaged in the same common purpose and rightfully there, laboring to the same end in the construction of the building, and it was its duty to so construct such contrivance, in view of the known custom of workmen to walk thereon, as not to imperil their lives or persons. Its duty was not alone to its own servants, but to other workmen as well, rightfully on the premises, whom it might reasonably apprehend would step or walk on the plank in moving about the building. The mere fact that appellant knew the plank was not primarily intended to be walked upon, did not deprive him of the right to walk thereon, nor constitute him a trespasser in so doing, in view of the established custom of the workmen generally to walk on the boards intended for the purpose the Westlake Company intended this one to serve. In view of the custom and known habits of the workmen in walking on this plank or plate in and about buildings in the course of construction, it is certainly no more than just to require that those constructing such convenient and inviting walks, exercise reasonable care to construct the same in such a manner as to render them reasonably safe for such purpose, when considered with reference to the known and established custom for which the party

so constructing the same must know they will probably be used. It appears from the testimony of appellant that the plank or board was such a convenient and inviting place to walk that the Westlake Company ought reasonably to have anticipated or apprehended the use, in view of the custom, and exercised ordinary care to make it reasonably safe by bracing, as indicated; and if it failed to exercise ordinary care to that end, which neglect on its part caused appellant's injury, it ought rightfully to respond in damages for his hurt.

Wherefore, the judgment with respect to the Westlake Construction Company will be reversed and the cause remanded.

2. We come now to ascertain the rights and liabilities of the parties with respect to the second respondent, the Roebling Construction Company. A recovery is sought against this respondent upon the theory that it is the master's duty to exercise ordinary care to furnish the servant a reasonably safe appliance with which, and a reasonably safe place in which, to perform his labors. Appellant being in the employ of the Roebling Construction Company, the relation of master and servant existed between them and, therefore, the principle of safe place and safe appliance has application to the work and place assigned for the performance of his duties. That rule, when properly stated, is that the master owes to the servant the duty to exercise ordinary care in furnishing an appliance with which, and a place in which, the servant may perform his labors with reasonable safety to himself, by exercising ordinary care on his part, subject only to the risks ordinarily incident to the employment. The principles incorporated in the rule thus stated, are elementary and fundamental. They pervade the entire department of our jurisprudence pertaining to the relation of master and servant and have been developed in the evolution of the law as being identical with the principles of right; founded upon sound reason and fund-

Loehring v. Construction Co.

amental justice betwen man and man. Therefore it is not only proper but it is the duty of the court as well to examine and apply the principle with respect to those fundamental conceptions of reason and justice. The rule, like all other rules of law, in itself is primarily a reasonable rule, and the harshness which sometimes appears in its application is not so much the infirmity of the rule as it is its misapplication by the courts in illy-considered cases. Applying, then, these principles to the facts developed, we must hold that it was the duty of this respondent to exercise ordinary care to furnish this appellant a reasonably safe place and appliance in which and with which to perform his labors, where, by being ordinarily careful on his part, he could enjoy a reasonable degree of safety, subject only to the risks ordinarily incident to the employment. This being true, where was this duty of the master to be performed? is the question in this case. Was it to be performed at the place where appellant was to work only; that is, appellant being engaged to build boxes for concrete on the sixth floor of the building, was the master required to do more than furnish him a reasonably safe place on that floor, or was it contemplated that he provide every part of the premises on the sixth or any other floor within a reasonable distance from the work, safe and secure within the meaning of the rule supra? By adverting to the fundamental principles of reason and justice incorporated and evinced in the rule, we apprehended that the proper measure of the master's duty in this behalf may be thus, almost if not quite, accurately stated to be, that the duty of safe place and appliance devolved upon the master exists so far as reasonable foresight in an ordinarily prudent person would dictate; so that the master is required to exercise ordinary care to furnish a reasonably safe place and appliance, not only at the identical situs of the work, but as well to furnish a reasonably safe place and appliance commensurate with the circumstances attendant and rea-

sonably within the contemplation of prudent persons exercising ordinary care and foresight to insure that degree of protection and security from hurt sought to be attained by the reason of the rule supra; so that, in this case, the master discharged his duty of safe place and appliance by providing the same on the sixth floor where appellant was engaged in his work of building boxes, unless it could have been reasonably foreseen by it in exercising that degree of care ordinarily exercised by a reasonably prudent person under like circumstances, that it would be necessary for appellant to go upon the fifth floor and push upward on the boxes with a board, as detailed in evidence, or otherwise discharge a portion of his duties thereabout. For the rule is neither unjust nor unreasonable, and, indeed, it would be highly unjust and unreasonable to declare the arbitrary doctrine that the master is required to render every part of the premises safe and secure that might, by a vivid imagination, be conjectured to be possible of mere incidental occupancy by his servant in the performance of the labor at some place on the premises, when it could not be reasonably foreseen that the servant would go upon such other portion thereof in the proper discharge of the duty assigned him. Indeed, it is elemental that the master owes no duty to his servant to protect him against injuries that cannot be reasonably anticipated and guarded against by the exercise of ordinary care, for to require more than this, would go beyond the limits of ordinary care and prudence and serve to constitute the master an insurer of the servant's safety. [Leitner v. Grieb, 104 Mo. App. 173, 77 S. W. 764; Anderson v. Forrester et al., 103 Mo. App. 382, 77 S. W. 486; Amer. Brew. Assn. v. Talbot, 141 Mo. 674, 42 S. W. 679; Gray on Negligence of Implied Duties, 133-134; Webb's Pollock on Torts (Enlarged Amer. Ed.), 45-46; Hysel v. Swift & Co., 78 Mo. App. 39.] "Now a reasonable man can be guided only by a reasonable estimate of probabilities. If men went about to guard themselves against every risk to themselves or others, which might

by ingenious conjecture be conceived as possible, human affairs could not be carried on at all.   The reasonable man, then, to whose ideal behavior we are to look as the standard of duty, will neither neglect what he can forecast as probable, nor waste his anxiety on events which are barely possible.   He will order his precaution by the measure of what appears likely in the known course of things."   [Webb's Pollock on Torts (Enlarged Amer. Ed.), 45-46; Amer. Brew. Co. v. Talbot, 141 Mo. 684, 42 S. W. 679.]   "When an injury cannot reasonably be anticipated and would not have happened unless under exceptionable circumstances it is not negligence to fail to take precautionary measures to prevent it, although if taken, the injury would not have resulted."   [Amer. Brew. Co. v. Talbot, 141 Mo. 684; Anderson v. Forrester, etc., 103 Mo. App. 382.]   There is no showing in the evidence that appellant was either expressly or impliedly ordered, invited or allured by his employer upon the fifth floor in the discharge of his duties, or to occupy the plate or plank from which he fell.   His work was on the sixth floor and he went on the floor below and upon the plate in question as a convenience in the discharge of his duties.   There is naught to show, nor is there evidence from which a reasonable inference could be deduced, that the employer, in the exercise of ordinary care, could have reasonably anticipated that the boxes they were building would assume such a condition during the process of construction as to require appellant to go upon the floor below and push upwards thereon with a board, as indicated, or for other purposes.   Indeed, the boxes which appellant and his companion were placing around the I beams to hold the concrete in place until set, were small and simple contrivances, of a temporary nature only, and an ordinarily prudent man could not have foreseen or anticipated that any condition would arise in the prosecution of that work which would require him to leave the floor on which he was engaged.   The principle of safe place and appliance does not extend beyond the

probabilities of reasonable anticipation within the contemplation of the parties under the circumstances of employment. [Whallon v. Sprague, etc., 37 N. Y. Supp. 174; Channon v. Sanford Co., 70 Conn. 573; Hardy v. Shedden Co., 47 U. S. App. 362.]

It is insisted, however, that inasmuch as the plate was immediately beneath the beams of the floor below, that it was customary for carpenters to walk on said plate in other buildings, and that the appellant was in the discharge of his duties when walking thereon and injured, and that even though he had not been ordered so to do, its convenience in the light of the custom mentioned operated as an implied invitation and allurement to him; and respondent, having permitted the same to be and remain thus convenient and inviting, a duty was thereby imposed upon it to exercise ordinary care to see that it was properly braced, etc. What has been said above on the question of safe place, should answer this argument as well. But there is another very sufficient reason why this respondent cannot be held responsible for the insufficiency of the same in the absence of its having appropriated or adopted the same to its own use by ordering or expressly inviting appellant or other workmen to occupy it, and that is, that it had no jurisdiction over the plate in question. The scaffold and plate incident thereto, were the property and under the control of another contractor. The respondent had no right to interfere therewith, the other company having the right to erect and maintain its scaffold, and this respondent, not having adopted or appropriated it, was not responsible for its insufficiency. And, indeed, having no power nor control over it and having assumed none, it would be acting without authority in attempting to interfere therewith and therefore owed no duty to render the same secure. [Troth v. Norcross, 111 Mo. 630, 20 S. W. 297; Whallon v. Sprague, etc., 37 N. Y. Supp. 174; Moynihan v. Kings Windsor Cement Co., 168 Mass. 450; Hughes v. Malden, etc., Gas

Light Co., 168 Mass. 395; Trask v. Ry. Co., 156 Mass. 298; Anderson v. Oliver, 139 Pa. St. 156; Hardy v. Shedden, 47 U. S. App. 362.]

It is finally insisted that section 6447, Revised Statutes 1899, renders the omission of the angle braces mentioned an act of negligence *per se.* The statute is as follows:

"All scaffolds or structures used in or for the erection, repairing or taking down of any kind of building shall be well and safely supported and of sufficient width, and so secured as to insure the safety of persons working thereon, or passing under or about the same, against the falling thereof, or the falling of such materials or articles as may be used, placed or deposited thereon. All persons engaged in the erection, repairing or taking down of any kind of building shall exercise due caution and care so as to prevent injury or accident to those at work or near by."

It will be noted that the requirements of said section in so far as material here, are: "Scaffolds . . . used in the erection . . . of any building, shall be . . . safely supported and of sufficient width, and so secured as to insure the safety of persons walking thereon or passing under or about the same against the falling thereof." The statute means what it says. Its purpose is to secure the safety of "persons walking thereon" or "passing under or about the same against the falling thereof." It is sufficient to say that the appellant was not "walking thereon," nor was he "passing under or about the same" within the meaning of the statute. The scaffold was on the outside of the building and for him to have been "walking thereon" within the meaning of the statute, he should have been on the scaffold, not on a mere contrivance serving as a support, in no sense intended to be walked upon, and to bring himself within the pale of its provisions and recover for injuries received while "passing under or about the same" on the theory of negligence *per se,* he should show that he was

"passing under or about the same" and was injured by reason of causes other then his own fault in subjecting such portion of it to an improper use and for which use it was not intended. He was inside the building, walking on a contrivance as much as twelve feet from the scaffold, which contrivance was parcel of its support and was constructed not as a scaffold, as plaintiff well knew, but for no other purpose than as a support thereto. It would be preposterous to say that by this enactment pertaining to the sufficiency of the scaffold as a scaffold, that the Legislature intended that every part and parcel of it, far removed from the contemplated structure, should be made so secure as to sustain a man's weight when using it for a purpose wholly foreign to its erection.

The court is of the opinion that the very learned trial judge erred in declaring the law to the effect that there was no duty owing from the Westlake Construction Company to the appellant and for the reasons given, the judgment as to the Westlake Construction Company will be reversed and the cause remanded. The judgment as to the Roebling Construction Company will be affirmed. It is so ordered. *Bland. P. J.,* and *Goode J.,* concur in affirming the judgment as to the Roebling Construction Company, and *Goode, J.,* concurs in reversing the judgment and remanding the cause as to the Westlake Construction Company. *Bland, P. J.,* dissents from what is said with respect to the Westlake Construction Company, being of opinion that the facts developed no liability as to that respondent.